# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

## OCTOBER TERM, 1919

[No. 2394]

IN THE MATTER OF THE ESTATE OF CHARLES F.
FORNEY, DECEASED.

[184 Pac. 206; 186 Pac. 678]

1. BASTARDS—LEGITIMATION MUST BE VALID IN STATE WHERE
BASTARD AND FATHER LIVED.
    Legitimation of a bastard must be according to the law of
    the state in which she and her father had lived during their
    joint lives, to entitle her to take as his heir personal property
    which he left in another state.

2. BASTARDS—FOR LEGITIMATION FATHER MUST HAVE FAMILY INTO
WHICH CHILD IS RECEIVED.
    Under Civ. Code Cal. sec. 230, for legitimation of a bastard,
    the father must have a family into which the child can be
    received.

ON PETITION FOR REHEARING

1. BASTARDS—LEGITIMATION, ONCE MADE, CANNOT BE REPUDIATED.
    Once a child born illegitimate has been legitimated, from
    such moment it acquires every legal right which a child born
    in wedlock can enjoy, its right of inheritance becomes fixed,
    and the father cannot repudiate his act in legitimating it.

2. BASTARDS—WHAT LAW GOVERNS LEGITIMATION.
    There can be only one proper state for the legitimation of a
    child born illegitimate; and, if it is not legitimated according
    to the laws of such state, it is not legitimated anywhere.

3. BASTARDS—LEGITIMATION CONTROLLED BY LAW OF STATE OF DOMICILE OF FATHER.

Where a bastard child was born in California to a father there resident, and subsequently the father died leaving personalty in Nevada, the child cannot claim such personalty on any theory of legitimation under Nevada law, not having been legitimated in California, whose laws controlled.

4. APPEAL AND ERROR—NO CONSIDERATION ON REHEARING OF QUESTION NOT URGED ON ORIGINAL HEARING.

A question not urged in the supreme court on original hearing of the appeal cannot be considered on rehearing.

APPEAL from Second Judicial District Court, Washoe County; *George A. Barlett,* Judge.

In the Matter of the Estate of Charles F. Forney, Deceased. From the decree of distribution, and an order denying a motion for a new trial, the administrator and the State appeal. **Reversed. Petition for rehearing denied.** SANDERS, J., dissenting.

*Sardis Summerfield,* for Appellant:

Under the law of California, decedent at no time occupied the legal status which enabled him by mere declarations and conduct to adopt claimant. Decedent was not a man of family, and had no wife nor family home. In order to prevail, claimant must bring herself squarely within the provisions of the California statute. Cal. C. C., sec. 230.

Legal adoption is purely a creation of statute law, and was and is unknown to the common law. Blythe v. Ayres, 96 Cal. 575; Estate of De Laveaga, 142 Cal. 169.

Adoption properly applies only to persons who are unrelated by blood to the adopting party. 1 Cyc. 917; Morris v. Estate of Sessions, 70 Mich. 297; Russell v. Russell, 84 Ala. 48; Vidal v. Commagere, 13 La. Ann. 516; People v. Norton, 59 Barb. 169; Brady v. Miles, 23 Ind. App. 432. Legitimation applies only to bastards upon whom the parent confers the status of legitimacy. 5 Cyc. 632; Blythe v. Ayres, 96 Cal. 559.

The laws of California must control in the distribution of the estate. Ross, v. Ross, 129 Mass. 243; White v. Tennant, 31 W. Va. 790; Smith v. Howard, 86 Me. 203;

Higgins v. Eaton, 188 Fed. 958; Hayes v. Pratt, 147 U. S. 570; Metcalf v. Lowther, 56 Ala. 318; Gibson v. Dowell, 42 Ark. 133. "The law of the domicile governs the distribution of personal property." Woerner's Law Amer. Admin., par. 565. "The law of the domicile of the parties is generally the rule which governs the creation of the status of an adopted child. 1 Cyc. 931. Even if the law of Nevada controls, respondent has failed to establish her heirship.

*L. B. Fowler, Attorney-General,* and *Robert Richards,* Deputy Attorney-General, for the State:

The decree and order appealed from should be reversed, with the direction to the lower court to enter its order and decree of escheat of the residue of the estate on the record as provided by law.

To entitle respondent to the residue of the estate, the record must bring her clearly within the provisions of law. The statutes of succession and distribution in all jurisdictions are not predicated on inherent right, since there is no natural right subsisting in any one to succeed to an ancestor's property at the time of his demise. 14 Cyc. 225; 8 Cyc. 894.

As the domicile of an illegitimate child is that of the mother, the laws of California are applicable to the facts of this case. "It is the rule of the American cases that the domicile of an illegitimate child is that of the mother." Louisville & N. R. Co. v. Kimbrough, 115 Ky. 512; McNicoll v. Ives, 3 Ohio N. P. 6, 4 Ohio S. & C. P. Dec. 75; Blythe v. Ayres, 96 Cal. 532; Cal. C. C., sec. 230; Garner v. Judd, 136 Cal. 395; Estate of De Laveaga, 142 Cal. 158. The existence of a family into which the child can be received is essential to an adoption under the statute. Estate of Gird, 157 Cal. 538; Estate of Jones, 166 Cal. 108.

Questions arising on similar statutes in other jurisdictions have been decided in accordance with the California decisions. Watson v. Richardson, 110 Iowa, 673; Morton v. Morton, 62 Neb. 427.

*James T. Boyd* and *Harlan L. Heward,* for Respondent:

Our courts have jurisdiction where property is situated in the state. When its status is established, the law gives the child a right of succession and a right to inherit whatever property the father might be possessed of in this state. The law of California is not the same as ours. It establishes a right of succession to property in that state and what acts are necessary upon the part of the father of an illegitimate child to give the child the right to inherit property in that state. Such statutes have no extraterritorial force. Hood v. McGehee, 189 Fed. 205; Brown v. Finley, 21 L. R. A. 679; Blythe v. Ayres, 96 Cal. 532; In Re Loyd's Estate, 148 Pac. 522.

The respondent claims the property by virtue of the statute of Nevada. Rev. Laws, 5833; Van Horn v. Van Horn, 45 L. R. A. 93; Brown v. Finley, 21 L. R. A. 679.

By the Court, COLEMAN, C. J.:

Charles F. Forney, long a resident of Truckee, Cal., died leaving on deposit in certain banks in Reno, Nevada, the sum of $4,500. The public administrator of Washoe County, Nevada, qualified as administrator of the estate, and in due time filed his final report and petition for distribution, which alleges:

"That the whole of said estate is the separate property of said decedent, and that your petitioner is informed and believes, and therefore alleges the fact to be, said decedent at the time of his death left him surviving no wife, nor father, nor mother, nor sister, nor brother, nor any children, nor ancestors, nor descendants, whomsoever, and left him surviving no heir or heirs at law or next of kin whatsoever, and, according to the best information and belief of your petitioner, all the rest, residue, and remainder of said estate should escheat herein and be distributed to the State of Nevada pursuant to the provisions of law."

On the 10th day of April, 1915, one Gladys Pohl, by and through her guardian ad litem, filed in the matter

of said estate her petition, reciting that she was the daughter of the deceased and one Minnie Pohl; that she was born at the town of Truckee, Cal., on the 6th day of April, 1908, and that ever since her birth she had continued to reside with her mother in said town; that the said Forney, on various and divers occasions, publicly acknowledged the said Gladys Pohl to be his daughter; that he provided her with the common necessaries of life, and informed various and divers persons that the said Gladys Pohl was his daughter, and that he intended to care and provide for her as a father should; that said Gladys Pohl is the only child of deceased, and that there are no other heirs. Said petition concludes with a prayer that the estate of the deceased be distributed to her after the payment of all charges of administration.

Upon the hearing, the court found the facts to be as alleged in the petition of said guardian, and entered a decree accordingly. From the decree, and from an order denying a motion for a new trial, the administrator and the state have appealed.

1. Counsel for appellants contend that the statute of California controls in determining whether or not Gladys Pohl was legitimated by Forney during his lifetime, while counsel for respondent argue that the statute of Nevada controls. The petition filed in behalf of the minor does not allege facts sufficient to make out a claim under the California law, in that it fails to allege that Forney received the child into his family.

A child's right to inherit depends upon its status. There must be some fixed place where the status of the child can be established. What better place than the residence of both parties? Common sense and reason both so dictate. The status of a child is not an ambulatory thing, which can be shifted from place to place to suit any condition that may arise. If any other rule prevailed, and Forney had left money on deposit in several states, the minor might be permitted to lay claim to the deposits in all of them except the state in which she and Forney had lived during their joint lives, which

would be, it seems to us, a reflection upon the law. It was to avoid such absurd results that led to the establishing of the rule recognized in Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 322, and therein expressed in the following language:

"It is a general principle that the status or condition of a person, the relation in which he stands to another person, and by which he is qualified or made capable to take certain rights in the other's property, is fixed by the law of the domicile, and that this status and capacity are to be recognized and upheld in every other state, so far as they are not inconsistent with its own laws and policy. Subject to this limitation, upon the death of any man, the status of those who claim succession or inheritance in his estate is to be ascertained by the law under which that status was acquired; his personal property is indeed to be distributed according to the law of his domicile at the time of his death, and his real estate descends according to the law of the place in which it is situated; but, in either case, it is according to those provisions of that law which regulate the succession or inheritance of persons having such a status."

This rule is recognized by and stated in Woerner's American Law of Administration (2d ed.) at section 565, as follows:

"It has been repeatedly stated that the law of the domicile governs the distribution of personal property, so that it is unnecessary to cite authorities here in support of this principle."

It is said in 1 Cyc., p. 931:

"The law of the domicile of the parties is generally the rule which governs the creation of the status of an adopted child."

There may be some exceptions to the general rule laid down, but these exceptions are made in favor of persons domiciled in the state in which the property is situated. 22 R. C. L., p. 42, sec. 8.

In opposition to the rule laid down, counsel for respondent rely upon the cases of Hood v. McGehee (C. C.) 189

Fed. 205, Brown v. Finley, 157 Ala. 424, 47 South. 577, 21 L. R. A. (N.S.) 679, 131 Am. St. Rep. 68, 16 Ann. Cas. 778; Blythe v. Ayres, 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40, and In Re Loyd's Estate, 170 Cal. 85, 148 Pac. 522. We do not think any of the cases cited sustains the contention. In the first case mentioned, real estate was involved, and question as to the adoption of the plaintiffs was not in controversy. It was purely a question as to whether or not adoptive children by proceedings under the laws of Louisiana, or the defendants, the next of kin, should inherit under the laws of Alabama. The court said:

"Each state has exclusive jurisdiction of the regulation of the transfer and descent of real estate within its limits. It would be competent for the legislature of Alabama to deny the right to inherit real property to children adopted in its own courts by its own procedure. It would be competent for it to confer such rights on children of its own adoption and deny it to those of the adoption of foreign states. This is what Alabama legislation, as construed by its court of last resort, has accomplished."

In the Loyd case the question here presented was not considered nor disposed of. In the case of Blythe v. Ayres the child sought to recover under the laws of California, the state in which the father had lived, and where all the declarations and acts relied upon to establish legitimation had taken place. In the opinion we find nothing repugnant to the rule stated. Brown v. Finley seems to sustain the contention made for it, but it is not in accord with the general rule, and does not appeal to our sense of what the law ought to be.

2. Having reached the conclusion that the law of California controls, let us inquire what the law of that state is as to the legitimating of a child born out of wedlock. Section 230 of the Civil Code of California reads as follows:

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with

the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption."

This statute has been construed by the Supreme Court of California in several cases, and in the matter of the Estate of De Laveaga, 142 Cal. 158, 75 Pac. 790, it was held that the existence of a family into which a child could be received was essential to an adoption, and in Estate of Gird, 157 Cal. 534, 108 Pac. 499, 137 Am. St. Rep. 131, the court, in speaking of this question, said:

"Different views have been entertained by justices of this court whether the existence of a family into which the child can be received is essential to an adoption under this section, but that question has been finally determined in the affirmative by this court in Estate of De Laveaga."

In addition to the California cases cited in the briefs of counsel, we call attention to In Re Walker's Estate (Cal.) 181 Pac. 792; In Re McNamara's Estate (Cal.) 183 Pac. 552, decided August 25, 1919. There is now pending and undecided before the Supreme Court of California the case of In Re Estate of Baird (No. S. F. 8995), in which the same question is involved. What constitutes a "family" has been a question of much concern before the Supreme Court of California.

But it not being contended that Forney had a family into which he could have taken the child, or that he did take her into his family, we are compelled to direct a reversal of the order and judgment appealed from, and that a new trial be granted; respondent to have leave to amend his petition, as he may be advised.

The judgment and order appealed from are reversed.

SANDERS, J., dissenting:

The State of Nevada and the public administrator of Washoe County, Nevada, through their joint and several notices of appeal, have appealed to this court from a

decree and order adjudging and decreeing Gladys Pohl, a resident of the State of California, to be the lawful heir and distributee of the estate of Charles F. Forney, deceased, who died intestate (living and domiciled in the State of California, at Truckee, Cal.), on or about the 25th of October, 1913, and by their appeal have succeeded in having it authoritatively determined that, in this jurisdiction, the rule of comity or private international law must be applied to the succession and distribution of said estate, the case not being within the exceptions to either rule. From this, in my opinion, it follows that both justice and comity demand that the appellants before proceeding further should voluntarily move the lower court to remit the fund involved in this controversy to the place of the decedent's domicile to be distributed according to the foreign law. There are no creditors, either local or domiciliary, or any citizen or citizens of this state to be affected by such an order. That it is competent for the lower court to make an order transferring the residue of an estate in this situation, to be handed over to some person authorized by proper authority to receive it at the domicile of the deceased, I consider undoubted. Gravillon v. Richard's Exr., 13 La. 293, 33 Am. Dec. 563. Should the appellants oppose an application for such an order, on the ground that Gladys Pohl is an illegitimate child of the deceased and not capable of inheriting under the foreign law, it would bring to the attention of the lower court a matter overlooked by the experienced and able counsel for the appellants and respondent, which I deem to be pertinent and controlling in so far as the State of Nevada is concerned in the succession or escheat of said estate. The State of Nevada does not come in by way of succession, but by an action or information of escheat to vest title to the residue of the estate in the hands of the public administrator in the State of Nevada. Escheat is not succession. It is the very opposite of succession. It is what happens when there is no succession. Estate of Miners, 143 Cal. 194 (dissenting opinion), 76 Pac. 968.

Before the State of Nevada can successfully assert its

claim of escheat, it must affirmatively appear that the person seized of the estate, real or personal, died within this state. Rev. Laws, 6130. The information filed by the state in the district court, alleging the state to be escheatable, does not contain such an allegation, but it is conceded, or must be conceded, that Forney died without and not within the State of Nevada. It is true, the statute provides that if the intestate shall leave no husband or wife, nor kindred, the estate shall escheat to the state for the support of the common schools. As amended, Stats. 1917, p. 37. It is also true that every citizen dying is presumed to leave some one entitled to claim as his heir, however remote, unless one or the other of the two exceptions known to the law—alienage or illegitimacy—should intervene. People v. Fulton Fire Ins. Co., 25 Wend. (N. Y.) 205.

Escheat in this jurisdiction depends upon positive statute. Like forfeiture, it is not favored. 10 R. C. L. 613.

Our statute provides:

"If any person shall die, or any person who may have died, within this state, seized of any real or personal estate, and leaving no heirs, representatives, devisees or legatees capable of inheriting or holding the same, and in all cases where there is no owner of such estate capable of holding the same, such estate shall escheat to and be vested in the State of Nevada." Rev. Laws, 6130.

This statute dates back to territorial days. It was the territorial law (Stats. 1861, p. 240), which was carried into the state law, and has remained on our statute books unchanged by amendment or supplement down to the present time.

The case as made by the state clearly falls within the purview of the first clause of the section that deals expressly with heirs capable of inheriting or holding the estate of a person who dies or died within the state. It is useless for me to enter upon an exhaustive discussion of this legislation. Its reason and purpose are obvious.

The motives and conduct of these high officers—the

attorney-general and the public administrator of Washoe County—are not questioned. They have sought with great zeal and ability, in the performance of their duty, to reach beyond the limits of the local law to enrich the State of Nevada at the expense of an unfortunate child, recognized by the local law to be an heir and entitled to the distribution to her of the fund here litigated. The question is one of strict legal right, and unless the right of the state can be maintained under its own law, which, in my view, cannot be successfully done, it follows that the information filed in the district court by the attorney-general, alleging that the residue of the fund in the hands of the public administrator of the estate of Charles F. Forney, deceased, is escheatable, should be dismissed.

Entertaining these views, it is not necessary for me to discuss the motion to dismiss the appeal of the public administrator. I have, however, a strong impression that he is in a much better position to appeal from the judgment and decree than the State of Nevada.

## ON PETITION FOR REHEARING

By the Court, COLEMAN, C. J.:

Counsel have filed a petition for a rehearing. It is an earnest plea in behalf of the unfortunate child; and, were it our duty to yield to the impulses of humanity. rather than to be controlled by cold principles of law, we would likely heed the same. But while all law is bottomed upon the theory that it works justice, there is no delusion that any abstract rule of law can in all cases work out results which satisfy our humanitarian instincts. The Creator, in establishing the laws of nature, well knew that the rain would fall upon the just and the unjust alike, and that, while the operation of every law of nature would injure some, the great masses of humanity would benefit thereby. So, in this case, we must lay down a rule which will be disastrous to the petitioner, but which, in the course of years, will effectuate justice in the great majority of cases. In

fact, we are laying down no new rule; we are simply adhering to well-established principles.

Counsel, after conceding the necessity of determining the status of Gladys Pohl, say that it must be determined under the law of this state. That is the sole question before the court. Upon our first consideration of the case, we were convinced as to the law which controls in establishing the status of the child. It seemed so clear to us at that time that we were, perhaps, somewhat lax in reasoning out the question. In response to the contention urged upon us, let us ask: Why should the question of the child's status be determined under the law of Nevada? This leads us to ask: What is a status? Is it an imaginary thing? Is it something which comes into existence to meet a temporary need, and which, when it has served the temporary purpose, may be abandoned? Or is it something which is permanent and enduring and which continues to exist to meet changing conditions and new situations in life, defying the will of the adopting parent himself, and even a change of the law? A child's status is nothing more nor less than its relationship to some other person, or to the state. We are aware that some courts seem to have had trouble in disposing of the question before us, but it seems clear that the trouble was due to a superficial, rather than to a careful, consideration of the underlying reasons which led up to the passage of statutes permitting the legitimation of bastards by the father, such as exist in California and Nevada.

1-2. It being established that a child is once legitimated, from that moment it acquires every legal right which a child born in wedlock can enjoy. Its right of inheritance becomes fixed. Could its father, after once legitimating a child, repudiate that act? Could he then, through pique, disappointment, the conduct of the mother, the adherence of the child to its mother's cause in a controversy between the father and mother, a new liaison, or an imaginary grievance against the child itself, denounce the child as an illegitimate, recall his

former acts of adoption, and make illegitimate one whom he had solemnly made legitimate? We say no; that the status of legitimacy once established is established for all times, conditions, purposes, and states. Conversely, we say that there can be only one proper state for the legitimation of a child, and, if it is not legitimated according to the laws of that state, it is not legitimated anywhere. When and where, then, does legitimation take place? Does it take place in the state of the legitimating parent, and at the time and place of the performing of the act of legitimating, or does it take place in a foreign state, and at some time other than the performing of the act?

3. As of what time can it be said that Forney legitimated the child in Nevada? Had he left no property in Nevada, would any one say the child was legitimated in this state? We think not. But the fact that he left money in this state is sought to be made the turning-point of the case. A child's status cannot be made to turn upon the existence or nonexistence of an estate. There are things more sacred to most of us than property, and one of them should be a person's status as to legitimacy.

The logic of counsel's argument is to make the status of the child turn upon the fact that Forney left personal property in this state. It seems to us that they have put the cart before the horse. The right to inherit depends upon the child's status, and not its status upon the existence of an estate in Nevada. If counsel's theory is correct and were carried to its logical conclusion, a situation might present itself wherein a child would be legitimate in Nevada and enjoy all the rights and privileges thereof, and be illegitimate in California, for the reason that the California statute pertaining to the legitimating of an illegitimate requires things not required in Nevada, while it is the policy of the law to hold legitimate everywhere a child once legitimated. 5 R. C. L. 920.

And, further, if counsel's theory is correct, a father,

having once legitimated a child in Nevada, where the law as to legitimating a bastard is not so rigid as in California, and being unable to obviate the force and effect of such legitimation in this state, but being desirous of accomplishing the same result, and of depriving such child of its right to inherit, and to make sure of doing it, and the facts not being such as would constitute a legitimating in California, would simply have to transfer his property from Nevada to California. What court would sanction such an act? Status does not depend upon the existence of inheritable property, but the right to inherit does depend upon the child's status. And we might say, parenthetically, that since realty is distributed according to the lex loci rei sitæ and personalty according to the lex domicilii, the question in this instance is whether or not the child was legitimated under the laws of California. In view of the fact that both the deceased and the child were at all times domiciled in California, and of the fact that personalty is distributed according to the law of the domicile, we have never considered the question a debatable one. Nor is it. The Blythe case, 96 Cal. 532, 31 Pac. 915, 19 L. R. A. 40, mentioned in our former opinion, really decides the question. That was a case in which Blythe, domiciled in San Francisco, while on a visit to England, begot the child in question. After its birth, and while it was living in England, he performed acts in California which were held sufficient to legitimate the child under the California law, and the court held that, in determining the status of the child, the law of the parent's domicile controlled.

Professor Minor, in his Conflict of Laws, in discussing the question as to what law governs in fixing the status of a child, says, at section 100:

"Two points should be noticed in this connection, which will aid us in determining the proper law in this case. The first is that the legitimation of a bastard is the creation of a status which is beneficial to him, and it should be presumed in his favor whenever adequate reason exists for such a course. The second is that this

beneficial status cannot be accorded the infant at the expense of a change of status on the part of the father not warranted by his domiciliary law.

"Applying these two principles, it follows that the law of the father's domicile at the time of the legitimating act will be the proper law to determine the status of both parties. If by that law the act in question legitimates the bastard, the beneficial status thus created will in general be recognized everywhere, including the bastard's domicile, though by the law of the latter state the act would not suffice to create a legitimation. On the other hand, if by the law of the father's domicile legitimation is not the result of the act claimed to have that effect, though under the bastard's domiciliary law legitimation would result therefrom, the status of legitimation should not be conferred upon the bastard, for that would be to subject the status of the father to a law to which it is not properly subject."

The Supreme Court of Massachusetts, in Irving v. Ford, 183 Mass. 448, 67 N. E. 366, 65 L. R. A. 177, 97 Am. St. Rep. 447, quotes the above language approvingly; and adopts the rule therein stated. And it was said in Richmond v. Taylor, 151 Wis. 633, 139 N. W. 435:

"So, also, the law of the domicile of the person making the written acknowledgment, and not that of the domicile of the child or the mother, governs the question of legitimation."

See, also, 7 C. J. 951.

As to the case of Wolf v. Gall, 32 Cal. App. 286, 163 Pac. 347, we simply wish to say that we have never attached any weight to it, so far as the question in this case is concerned; for, no matter what significance might be given it under ordinary circumstances, the Supreme Court of California, on appeal (32 Cal. App. 286, 163 Pac. 351), held that it was not entirely in accord with its reasoning. In any event, we would hardly be justified in assuming that an inferior court can reverse a superior one; and, so far as we are advised, the law as laid down in the Blythe case is still good in California.

But counsel say that it has been repeatedly announced that the courts of California will decide such questions as this according to the laws of that state, regardless of international law, or any other law, and hence there can be no law of comity between this state and California upon the question. No decision of the California court so holding has been called to our attention. The Blythe case, in our opinion, refutes the statement, if anything. In that case the court awarded the estate to a child which had been born in England and had never seen America until after the death of its father, and the opinion turned upon the proposition that the law of the domicile of the father controlled a rule which we know to be supported by practically all of the authorities in the United States, and as well, we believe, by sound reason. Had the child in that case been domiciled in Nevada, the same rule would have governed.

4. Counsel insist that the state cannot claim the money in question by escheat. This question was not urged upon us nor considered upon the original hearing; and, as said on rehearing in Nelson v. Smith, 42 Nev. 302, 176 Pac. 261, 178 Pac. 625, it cannot be now considered. But it seems to us that the point is out of the case. Petitioner must stand or fall upon her rights as a legitimated child. If she was not legitimated, she cannot take the property, and it matters not to her what becomes of the etsate.

The petition for rehearing is denied.

SANDERS, J.: I dissent.