505 P.2d 779

In the Matter of the ESTATE of Albert J. DUQUESNE, also known as A. J. Duquesne.

Jeannette M. RADKE and Marguerite Hornberg, Appellants,

v.

Andrew J. SCHERER, Respondent.

No. 12908.

Supreme Court of Utah.

Jan. 12, 1973.

---

Fabian & Clendenen, Glen E. Clark, Narrvel E. Hall, Salt Lake City, for appellants.

Harley W. Gustin, James W. Beless, Salt Lake City, for respondent.

HENRIOD, Justice:

Appeal from a summary judgment saying that two daughters of an illegitimate mother, Eugenia, all of whom were domiciled in Illinois and subject to that state's laws,[1] could not inherit from a half-uncle decedent domiciled in Utah and subject to Utah's laws.[2] Affirmed with no costs awarded on appeal.

Paternity is conceded, but the record clearly indicates that Eugenia's father never married her mother, so that the

---

1. Illinois Rev.St.1969, ch. 3, par. 12: "An illegitimate child is heir of his mother . . . . . An illegitimate child whose parents intermarry and who is acknowledged by the father . . . shall be considered legitimate."

2. Title 74–4–10, Utah Code Annotated 1953: "Every illegitimate child is an heir of the person who acknowledges himself to be the father . . . and in all cases is an heir of his mother."

conjunctive requirement of the Illinois statute that the "parents intermarry" never has been met. It appears that this statute is one that determines a class of persons that may inherit. One part of the statute allows an illegitimate to inherit from his *mother*, but the same illegitimate cannot inherit from his *father* unless the latter does two things: 1) acknowledges paternity and 2) marries the illegitimate's mother. It seems inescapable that the Illinois statute determines the inheritability status of a person born out of wedlock, i. e., his status of illegitimacy qualifies him to take as an heir from a deceased mother, but such status does not maintain with respect to taking from his father. To acquire his status as a beneficiary under the laws of descent as to his father, along with others having status of heirs, it appears obvious that the two events mentioned above must eventuate. Without both of such events occurring, such persons, like Eugenia's daughters here, remain illegitimate in Illinois for the purpose of inheriting through the paternal line. Appellants concede that such status is determinable by the laws of Illinois,— Eugenia's children's domicile. This being so, that status of illegitimacy would be recognized and given full faith and credit in Utah and other sister states, and would not be compatible with appellants' contention here that the law of the situs of the property governs. Hence, anyone claiming under Eugenia would be ineligible to inherit in Utah, if Utah did not allow illegitimates to inherit. This is the case in Utah, unless such person has been legitimized in Utah by Utah law,—and here lies the nub of this case.

■ Appellants urge that an illegitimate can inherit in Utah, and that the Utah statute is not a legitimation statute since such illegitimate is "no more and no less legitimate before" than after the father acknowledges him, (as stated in appellants' brief). This seems to be somewhat of a non sequitur and a problem in semantics, because we start out with the premise that an illegitimate cannot inherit in Utah. He *can* inherit, however, if for some reason, where an exception is made in his case, he is allowed to inherit, e. g., by virtue of a statute like 74-4-10, which allows him to inherit if he has changed his status, —or has a statutory reason for inheriting, if you please. If, as appellants contend, he is still an illegitimate, exception or not, then I assume he could not inherit,—which one might say is technical reasoning such as indulged by appellants.

After the acknowledgment, the illegitimate in Utah is no longer an illegitimate *for inheritance purposes*, so he is not a whole illegitimate but only a half illegitimate and can then take his father's estate, where his little brother of the same blood, without the acknowledgment, remains a whole illegitimate, whose status perpetuates his poverty. Whatever you call the stat-

ute,—"legitimation" or "descent,"—a change both in social status and inheritability effectively has been initiated, and we think the trial court correctly could have arrived at the same conclusion by choosing the words "descent" or "Legitimation and/or descent" instead of "legitimation" in tagging the statute.

The answer of the appellants to this line of reasoning, is that the father has acknowledged the child and consequently satisfied the Utah statute that gives him the status of an heir, but not legitimacy. We believe that the legislature did not have in mind under 74-4-10 that, although we recognize a sister state's law that makes one illegitimate,—as is the case here with Eugenia's children, and which law must be given full faith and credit,—that such statute can be circumvented by using one half of the sister state's requirements for legitimation and/or right to inherit, and ignore the other half, by use of highly technical interpretational formulae on a statute whose intent and purpose is at least debatably consistent with the trial court's conclusion,— such statute being composed of parts lending themselves to an urged interpretation to the liking of one's potential inheritable interest therein,—or to that of the trial court.

Appellants say that if this case is affirmed, dire results will ensue as to the rights of drunken acknowledging fathers and the like, but this question is not before us. The one before us simply is whether an erstwhile illegitimate is "legitimized" or has an "entitlement" or a "privilege," or "right" for the purpose of inheriting,— that's all. Suffice it to the date thereof to say that when this highly controversial question again is posed in an appropriate case as to which comes first, legitimation or descent, we just might analogize and cogitate as to which comes first, the chicken or the egg.

 To decide other than as we have done here would result in the anomalous and paradoxical result that one domiciled in Illinois, who has never stepped foot in Utah, could inherit the $133,000 assets involved in this case, whose situs is Utah, and take them outside the state of Utah and its power to tax, whereas had that same $133,000 been assets whose situs was Illinois, such person could not touch it by inheritance or otherwise,—all of which lends a substantial degree of logic and good sense to the rule that inheritable status is determinable by the law of the domicile of that person who asserts a claim, as an heir, to property in some other jurisdiction.

Our conclusion is borne out in principle by one of our own cases, Popp v. Roth,[3] which, although involving an adoption mat-

3. 9 Utah 2d 96, 338 P.2d 123 (1959); see also 87 A.L.R.2d 1280.

ter, subscribes to the doctrine of recognizing the law of a person's domicile as that to which full faith and credit will be accorded with respect to status or legitimacy, —and significantly we were enunciating that doctrine by a unanimous decision penned by the late Mr. Justice Wade.

Concededly, the Popp decision did not apply to a probate matter, but it seems to be prologue and quite analogous to matters of descent involving illegitimates, both of which branches of the law have to do, at least in part, with the rights and privileges of persons having that status.

Our sister state of Nevada previously has indicated an espousal of principles that we think are applicable here. In re Forney's Estate,[4]—strikingly similar in fact and principle to the case here, had this to say where a father, domiciled in California, 1) acknowledged a daughter born out of wedlock there, but 2) did not "receive the child into his family," which requirement also was necessary for an illegitimate to inherit from its father in California:

A child's right to inherit depends upon its status. There must be some fixed place where the status of the child can be established. What better place than the residence of both parties? Common sense and reason both so dictate. The status of a child is not an ambulatory thing, which can be shifted from place to place to suit any condition that may arise. If any other rule prevailed, and Forney had left money on deposit in several states, the minor might be permitted to lay claim to the deposits in all of them except the state in which she and Forney had lived during their joint lives, which would be, it seems to us, a reflection upon the law.

The appellants might urge that only personal property was involved in that case, which is true, but we have difficulty in resorting to some other principle with respect to real property, which magically can produce personal property and its asportation. The abortion would seem to be apparent in the instant case, where both personal and real property are involved. It is obvious that two inconsistent results would ensue if we applied one rule of status or legitimacy, if you wish, resulting in inheritance rights in Utah with respect to personal property, but a different kind of right growing out of the same status with respect to realty and requiring a different distribution by the laws of another state. Such consequence seems somewhat illogical, looking at the matter from a "status" standpoint in confrontation with that of appellants' "situs" interpretive empathy.

4. 43 Nev. 227, 184 P. 206, 186 P. 678, 24 A.L.R. 553 (1919) and authorities therein cited.

The following, from 87 A.L.R.2d 1280 pretty much says what we are trying to say:

The courts in an overwhelming majority of jurisdictions take the position that the question whether a particular child has acquired the requisite status of legitimacy to bring him within the class of persons who are permitted to inherit by the law of the situs is a question, not of descent or distribution, but of personal status, and as such is governed by the personal law of the child, and the existence or acquisition of a legitimate status by the child's personal law will be given effect under the inheritance law of the situs (so long as such recognition does not violate the public policy of the forum or situs), as will the denial of such status.

And we think the eminent Prof. Beale in his "Conflicts of Laws," Vol. 2, sec. 304.1, p. 1033, reflects the letter and spirit of our conclusion and that of the A.L.R. citation above, when he said:

If a bastard is legitimized by the law of the domicile, he may inherit, and if the law of the domicile finds him illegitimate he may not inherit even though by the law governing distribution he would inherit.

CALLISTER, C. J., and TUCKETT, J., concur.

1. 23 Am.Jur.2d Descent and Distribution §§ 19 and 20.

CROCKETT, J., concurs in the result.

ELLETT, Justice (concurring in the result).

I concur in the result. However, I cannot see that the laws of Illinois have anything to do with the case. The deceased was a resident of Utah, and his property is in Utah. Therefore, we need only look to Utah law to see who takes.[1]

There is no question but what the mother of appellants was illegitimate under Utah law as well as under Illinois law. There is also no question about her being acknowledged by her natural father. The fact that the recognition occurred in Illinois is of no importance. The law is stated in 10 Am.Jur.2d Bastards § 159 as follows:

. . . For purposes of inheritance, acknowledgment or recognition may be sufficient, although it took place in another state where the father resided at the time, and in which the son might have no such right to inherit . . . .

In Utah our statute[2] provides:

Every illegitimate child is an heir of the person who acknowledges himself to be the father of such child, and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same

2. Section 74-4-10, U.C.A. 1953.

manner as if he had been born in lawful wedlock. . . .

If the estate of the father of the mother was being probated in Utah, these appellants would take the share which would belong to their deceased mother.[3] However, it is not the estate of her father but rather is that of her blood half brother, the legitimate son of her father, which is being probated.

The distribution of the estate must be made pursuant to Section 74-4-5, Subsection (4) or (6).

Subsection (4) reads:

If there is neither issue, husband, wife, father nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children or grandchildren of any deceased brother or sister by right of representation.

Subsection (6) reads:

If the decedent leaves neither issue, husband, wife, father, mother, brother nor sister, nor children or grandchildren of any deceased brother or sister, the estate must go to the next kin in equal degree, excepting that when there are two or more collateral kindred in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.

Now, the appellants take only through their mother. If she could not take, then her daughters cannot take.

At common law illegitimate children could not inherit property.[4] The common law of England is the law of Utah except as it has been modified by statute; and while the statute permits the illegitimate child to inherit from its mother and from its father if he acknowledges the child to be his, the statute makes no provision for inheriting from the brothers and sisters who are legitimate children of their father.

Section 74-4-11, U.C.A.1953, seems to indicate a legislative intent that an illegitimate cannot inherit from collateral half blood relatives on the father's side. It provides that the property of an illegitimate child who dies intestate without leaving husband or wife or lawful issue will go to his mother or in case of her death to *her* heirs at law. This statute prevents the decedent from participating in the estate of his half sister, and it would seem that the legislature intended that she (or in case of her prior death, her descendants) should not be able to share in his estate.

The appellants, therefore, cannot take under Subsection (4), supra, a share of the decedent's property through their mother,

3. In re Garr's Estate, 31 Utah 57, 86 P. 757 (1906).

4. 2 Wendell's Blackstone Commentaries, page 286.

nor can they take under Subsection (6) above for the reason that they are not recognized in law as the "next of kin." The term "next of kin" refers to nearest blood relatives who would take the personal estate of one who dies intestate[5] and does not include bastards.[6] Since their mother could not inherit any part of the estate of the decedent, the appellants likewise are precluded from inheriting and, therefore, cannot be considered as belonging to the class of "next of kin."

---

5. Ballentine Law Dictionary page 868. 6. 10 C.J.S. Bastards § 24.