FRANK IRVING *vs.* LEONARD A. FORD, administrator.

Suffolk.    March 13, 1903. — May 23, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, & HAMMOND, JJ.

*Conflict of Laws.    Child,* Statutory legitimation.

The statutory legitimation of a child by acknowledgment without marriage depends on the law of the domicil of the father when the statute was passed and the acknowledgment was made.

The acknowledgment of an illegitimate child without marriage with the mother, which by a statute of the domicil of the child in another State where the acknowledgment took place would make the child legitimate, cannot have that effect if the domicil of the father both when the statute was passed and when the acknowledgment took place was in this Commonwealth, the laws of which require marriage in addition to acknowledgment in order to effect legitimacy.

PETITION, filed in the Probate Court for the County of Suffolk on June 25, 1901, for a distributive share in the estate of Sheridan W. Ford, deceased intestate, in the case before this court at a previous stage as reported in 179 Mass. 216.

In the Probate Court *Grant,* J. made a decree excluding the petitioner from the distribution.    On appeal the case came on to be heard before *Lathrop,* J., who at the request of the parties reserved it for determination by the full court, such decree to be made as justice might require.

*B. R. Wilson,* for the petitioner.

*L. A. Ford & D. F. Kimball,* for the respondent, submitted a brief.

LATHROP, J.    The question which arises in this case is that left undecided when the parties were before us on a petition to the Probate Court to amend the record of a petition for administration of the estate of Robert Irving, otherwise known as Sheridan W. Ford, by substituting the name of the petitioner and his mother as the next of kin, and to remove the administrator appointed on an earlier petition.    See *Irving* v. *Ford,* 179 Mass. 216.

The case is now before us on an appeal from a decree of the Probate Court on a petition asking that the petitioner be allowed

one third of the estate of Sheridan W. Ford, claiming to be entitled thereto as a son.

For the purposes of this case it must be considered as settled by the previous decision that the so-called marriage between the petitioner's father and mother in Virginia, while both were slaves, was void, and that the marriage between the common father of the petitioner and of the respondent in Massachusetts was valid; and that the respondent and not the petitioner is the legitimate son of Sheridan W. Ford, unless the statute of Virginia, passed on February 27, 1866, makes him a legitimate child in this State.

This statute declared that all colored persons cohabiting together on February 27, 1866, should be deemed husband and wife, and all their children legitimate, whether born before or after the passage of the act. The father and mother of the petitioner were not then cohabiting together, and the petitioner's claim is based upon the last clause of the act, which reads as follows : " And when the parties have ceased to cohabit before the passage of this act in consequence of the death of the woman, or from any other cause, all the children of the woman recognized by the man to be his shall be deemed legitimate."

At the time of the passage of this act, the petitioner's domicil was in Virginia, and the domicil of Sheridan W. Ford was in Massachusetts.

We are unable to see any ground upon which the State of Virginia can impose upon a person having his domicil in Massachusetts a legitimate son, when by our law he is illegitimate. By our law it is provided : " An illegitimate child whose parents have intermarried, and whose father has acknowledged him as his child, shall be considered legitimate." Pub. Sts. c. 125, § 5. R. L. c. 133, § 5. The Virginia act makes mere acknowledgment sufficient, while our law requires both marriage and acknowledgment.

The law which governs this case is well stated by Mr. Minor in his treatise on the Conflict of Laws, § 100. After stating the question, which domicil should govern, when the act of legitimation is not marriage but mere acknowledgment or a statute of a State, and the bastard has his domicil in one State and his father in another, he proceeds : " Two points should be noticed

in this connection, which will aid us to determine the proper
law in this case. The first is that the legitimation of a bastard
is the creation of a status which is beneficial to him, and it
should be presumed in his favor whenever adequate reason exists
for such a course. The second is that this beneficial status can-
not be accorded the infant at the expense of a change of status
on the part of the father not warranted by his domiciliary law.
Applying these two principles, it follows that the law of the
father's domicil at the time of the legitimating act will be the
proper law to determine the status of both parties. If by that
law the act in question legitimates the bastard, the beneficial
status thus created will in general be recognized everywhere,
including the bastard's domicil, though by the law of the latter
State the act would not suffice to create a legitimation. On the
other hand, if by the law of the father's domicil legitimation is
not the result of the act claimed to have that effect, though
under the bastard's domiciliary law legitimation would result
therefrom, the status of legitimation should not be conferred
upon the bastard, for that would be to subject the status of the
father to a law to which it is not properly subject."

In *Lingen* v. *Lingen*, 45 Ala. 410, the domicil of the father
was in Alabama. The illegitimate child was born in France,
having a French woman for its mother. The father while in
France acknowledged the child to be his, but he did not marry
the woman. This acknowledgment was sufficient in France to
make the child legitimate, but not in Alabama. It was held
that the legitimation was governed by the law of the father's
domicil, and not by that of the bastard. See also Wharton,
Confl. of Laws, § 246.

So in *Loring* v. *Thorndike*, 5 Allen, 257, 263, where a citizen of
this Commonwealth had an illegitimate child born in Germany,
and afterwards married the mother in that country and acknowl-
edged the child there, the legitimacy of the child was determined
by the provision of the Rev. Sts. c. 61, § 4. See also *Morris* v.
*Williams*, 39 Ohio St. 554; *Blythe* v. *Ayres*, 96 Cal. 532.

It may be conceded that if the father of the petitioner had
been domiciled in Virginia in 1866, when the statute in question
was passed, or when he acknowledged the petitioner as his son,
the petitioner would have acquired a status as a legitimate son

which would be recognized here. *Scott* v. *Key*, 11 La. An. 232. *Miller* v. *Miller*, 91 N. Y. 315. See also *Ross* v. *Ross*, 129 Mass. 243. There are however decisions to the contrary. *Smith* v. *Derr*, 34 Penn. St. 126. *Williams* v. *Kimball*, 35 Fla. 49.

But as the petitioner's father, when the statute was passed and when the acknowledgment was made, was domiciled in this Commonwealth, the question of the petitioner's legitimacy must be determined by our law, which does not recognize acknowledgment alone as legitimation; and the order must be

*Decree of Probate Court affirmed.*