256 Pac. 1104

No. 27,451.

In re Estate of John J. Riemann; Maria R. Fett, *Appellant*, v. Cynthia Riemann, as Administratrix, etc., et al., *Appellees.*

(262 Pac. 16.)

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. Descent and Distribution—*What Law Governs.* Rule followed that the devolution of intestate personal property is governed by the law of the domicile of the decedent, and the devolution of intestate real property is governed by the law of the state where it is situated.

2. Adoption—*Right of Inheritance—What Law Governs.* A child adopted in a foreign state has inheritable capacity to lands situated in this state in conformity with our law governing the distribution of intestate estates, notwithstanding the law of the foreign state where the adoption proceedings were effected imposed upon her a disqualification to inherit from the collateral kindred of her adoptive parent.

3. Same—*Right of Inheritance—What Law Governs.* Plaintiff was adopted in Illinois by the brother of a Kansas citizen, who died single, without issue, and intestate. By Illinois law she was disqualified to inherit from her adoptive parents' collateral kindred. *Held,* that such disqualification should be construed as a rule of inheritance peculiar to Illinois, and ineffective to alter or thwart the regular operation of Kansas law governing the devolution of decedents' estates.

4. Same—The case of *Boaz v. Swinney,* 79 Kan. 332, 99 Pac. 621, is overruled.

Adoption of Children, 1 C. J. pp. 1372 n. 20, 1375 n. 42, 1395 n. 63, 1399 n. 11, 1403 n. 47; 21 L. R. A. n. s. 679; 25 L. R. A. n. s. 1285; L. R. A. 1916A 666; 1 R. C. L. 615. Conflict of Laws, 12 C. J. pp. 439 n. 50, 467 n. 91, 476 n. 73, 480 n. 10. Descent and Distribution, 18 C. J. pp. 808 n. 16, 811 n. 43.

Riemann v. Riemann.

Appeal from Barton district court; RAY H. BEALS, judge. Opinion on rehearing filed December 10, 1927. (For original opinion of affirmance see 123 Kan. 718, 256 Pac. 1004.) Reversed.

*Nelson Miller,* of Le Mars, Iowa, for the appellant.

*R. C. Russell,* of Great Bend, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This is a rehearing. (*Riemann v. Riemann,* 123 Kan. 718, 256 Pac. 1004.) The facts were fully stated and the legal question developed in our first opinion. Briefly repeated, John J. Riemann, of Barton county, died intestate, unmarried and without issue. The appellant, Maria R. Fett, is the adopted daughter of Henry J. Riemann, a deceased brother of John. Henry lived in Illinois, and appellant was adopted by him in accordance with the adoption law of Illinois, one feature of which is that the relation between adoptive parent and adopted child "shall be, as to their legal rights and liabilities, the same as if the relation of parent and child existed between them, except that the adoptive father or mother shall never inherit from the child; *but to all other persons the adopted child shall stand related as if no such act of adoption had been taken.*" (Public Laws, Illinois, 1867, p. 134.)

Following *Boaz v. Swinney,* 79 Kan. 332, 99 Pac. 621, we held that the right of an adopted child to inherit Kansas land was dependent upon the peculiarities of the adoption law of the state under which the adoption proceedings were had. The court is now disposed to reëxamine the soundness of that conclusion.

Going back to first principles, the law regulating the transmission of the estates of decedents, testate or intestate, is whatever the law-making power declares it to be. As to real estate, in cases of intestacy it devolves in accordance with the statute of descents and distributions in the state where the land is located. (*Cooper v. Ives,* 62 Kan. 395, 63 Pac. 434; *Williams v. Wessels,* 94 Kan. 71, 145 Pac. 856.) The law can make anybody an heir (*Newby v. Anderson,* 106 Kan. 477, 188 Pac. 438), and even the rights of blood kindred to inherit are prescribed by statute and would not exist apart from the statute (*Hannon v. Taylor,* 57 Kan. 1, syl. ¶ 2, 45 Pac. 51).

While the matter of adoption of children occupied a place of importance in the civil law (Cooper's Justinian, 3d ed., 28), the common law gave it no countenance. Speaking generally, in this

country the law of adoptions is whatever the statute prescribes. The statutes of some states, like Kansas, are liberal, and confer upon an adopted child and reciprocally on an adoptive parent every right which exists where the relationship is that of parent and child by legitimate blood kindred. (R. S. 38-107, 22-119, 22-120; *Baird v. Yates,* 108 Kan. 721, 196 Pac. 1077.)

Touching the rights of children adopted in one state to inherit land in another state, the matter of comity between states is not without its significance, but not necessarily more so than in dealing with the rights of other children or people in general. ‖ So far as the law of the state where the adoption proceedings were had is in accord with the law of the forum it will be respected, and where it is more or less at variance with the law of the forum it may be disregarded.‖ Thus in *Keegan v. Geraghty et al.,* 101 Ill. 26, a child adopted in the state of Wisconsin was denied the right to inherit in Illinois from a collateral relative of its adoptive parent. This was a perfectly logical decision for the Illinois court to make, because Illinois law expressly denies to adopted children that right; and comity between states did not require that an adoption under Wisconsin law should be accorded greater potency in Illinois than an Illinois adoption itself would be. In other words, the Illinois court quite properly declined to depart from the policy of its own law governing the devolution of Illinois real property. But the same course of reasoning, pursued in *Keegan v. Geraghty,* might very well have led this court to a different conclusion from that reached in *Boaz v. Swinney.* In Kansas, as elsewhere, intestate succession of real estate is governed by the local law. (18 C. J. 809.) Paraphrasing the text of *Hood v. McGehee,* 237 U. S. 611, 59 L. Ed. 1144, Kansas is the sole mistress of the devolution of Kansas land by descent. By our local law the rights of inheritance enjoyed by adopted children are identical with those enjoyed by natural, legitimate children. ‖ And our courts should not be required to give cognizance to a peculiar discrimination imposed by foreign law upon adopted children when such discrimination is so greatly at variance with the generous spirit of our own law and so repugnant to the theory which underlies the law governing adoption of children in this state.‖ In *Dreyer v. Schrick,* 105 Kan. 495, 185 Pac. 30, where pertinent paragraphs of our statute of adoptions and of our statute of descents and distributions were reproduced and cases from other jurisdictions discussed, this court said:

"Statutory peculiarities may account, in part, for some of these decisions.
.    .    .    .    .    .    .    .    .    .    .    .    .    .

"In this state adoption carries with it every feature of the domestic relation of parent and child, except natural parentage. Capacity to inherit follows as an incident, but not as the sole end. . . . The reciprocal rights, duties, privileges, responsibilities and liabilities created are those of parent and child in fact, and statutes referring to the relationship, which do not clearly exclude adopted children, must be interpreted as including them on equal footing with natural children." (pp. 497, 498.)

Not only may different statutes constrain different judicial conclusions on questions of law pertaining to the incidents and consequences attaching to the adoption of children, but the hostile attitude of the common law towards the whole subject of legitimation and adoption of children is not unlikely to be reflected in the decisions of great American courts which adhere to the common-law tradition. (Statute of Merton, 20 Hen. III, c. 9 [A. D. 1235]; *Birtwhistle v. Vardill*, 2 Cl. & Fin. 571, 5 Eng. Rul. Cases 748 [House of Lords, 1840]; *Keegan v. Geraghty*, supra; *Frey v. Nielson*, 99 N. J. Eq. 135, 132 Atl. 765.) While the jurisprudence of this state is greatly obligated to the common law, on this particular matter of adoption as well as on the law of intestate succession our lawmakers deliberately crossed over to the side of the civil law—an historical fact which gives a keynote to the general trend of decisions of this court throughout its entire history.

We have referred particularly to the case of *Keegan v. Geraghty*, but it is only a type of many, some of which are cited in *Boaz v. Swinney*, supra. There is, however, what now seems to us to be a more logical solution of the legal question than that heretofore reached by this court. We think there is no such status as that of a partially adopted child, any more than there is of a partially married spouse. A child is adopted or not; a woman is either married or not. By the law of the state where a woman is married she may be entitled on the death of her husband to inherit one-third of his real estate. In Kansas she would inherit one-half at least, and in the event her husband died intestate and without issue she would inherit the whole of it. In the widow's case we would pay no attention to the restrictions of her rights of inheritance imposed by the law of the state where the marriage occurred. So, too, in some jurisdictions illegitimate children are disqualified to inherit. In this state they inherit from the mother, and from the father also if he has

openly acknowledged their paternity. (R. S. 22-121, 22-122.) Kansas courts would not think of denying an illegitimate child his right of inheritance according to Kansas law because of some limitation or bar of such right imposed by the law of the place of his birth or domicile. (*McLean v. McLean*, 92 Kan. 326, 329, 140 Pac. 847.) And so it does not seem logical to bar an adopted child of its right to inherit Kansas land under Kansas law because its adoption occurred in a state where rights of inheritance are less generous than under our law.

In the well-reasoned case of *Calhoun v. Bryant et al.*, 28 S. Dak. 266, the question was whether an adoptive mother could inherit South Dakota land from her adopted child when the adoption proceedings had occurred in Illinois, it being conceded that she would be disqualified to inherit under the Illinois law of adoptions. After outlining the liberal attitude of the law of South Dakota towards adoptions, the court said:

"Counsel for appellant urge that adoption has its foundation in contract between the person adopting and the child adopted, and that the whole law of the state governing and defining the legal rights flowing from adoption enters into and becomes a part of the relationship created thereby. We cannot agree with this interpretation of these statutes. We believe it should be held that the statutes of each state authorize and permit the creation of the relationship of parent and child by adoption, with such incidental rights within the state as are conferred by the laws of that state, in the matter of custody, control, and the right of inheritance of property in that state. The relationship created no more has its foundation in contract than has the relationship created by birth. . . . Appellant's counsel contend and cite numerous decisions which say that the 'status' of the parent and the adopted child is fixed by the law of the state in which the adoption takes place, and urge that these authorities in effect held that the right of inheritance of parties to an adoption is fixed by the law of that state. The conclusion of such an argument would be that this court must enforce rights of inheritance of property in this state as established by the laws of a sister state, or must limit the right of inheritance of property as the same is limited by the laws of another state. We cannot accede to this view. . . .

". . . As we have suggested, the 'status' or 'relationship' of parent and child, whether by birth or adoption, is clearly distinguishable from the right of inheritance. The legislature of another state may declare, in the absence of constitutional restrictions, that no child, either by birth or adoption, shall possess the right to inherit property from its ancestors. Would the courts of this state hold that under such law a child, resident of that state, would be rendered incapable of inheriting real property of the parent which was situated in this state? . . ." (pp. 275-277.)

The court discussed a number of American and English cases, including our own case of *Boaz v. Swinney,* and held:

"That the right of inheritance, by the adoptive mother, of real property in this state is incidental to the relationship created by the adoption under the laws of Illinois, and is governed by the law of this state, and not by the law of that state defining the right of inheritance between the adopted child and the adoptive mother." (p. 283.)

In *Anderson v. French,* 77 N. H. 509, L. R. A. 1916A, 660, the appellant claimed a right of inheritance in the New Hampshire intestate estate of a sister of her adoptive father, which claim was disputed by the next of kin on the ground that appellant's adoption had been effected in Massachusetts under whose law an adopted child was denied the right of inheritance from the lineal or collateral kindred of the adoptive parent. After analyzing the familiar cases on this general subject, the New Hampshire supreme court discourses on the analogy of marriage and adoption, and the effect of these upon the right of inheritance, and says:

"A marriage legal in one state is legal in every state; but the distributive share of the wife in her husband's estate is not ascertained by the law of the state where the marriage took place, but by the law of the husband's domicile at death. This principle is universally recognized and is not questioned by the appellees. On the other hand, they say that the status of marriage has no analogy to adoption, because it is a very ancient custom. Whatever may be said as to the status of marriage and adoption, the rights of inheritance as to both relations are governed largely by statute in this country; and no logical reason has been advanced, and none occurs to us, why the rights of a married woman in her husband's personalty should be determined in accordance with the laws of his last domicile, and the rights of an adopted child in relation to personalty by the laws where the adoption occurred, regardless of the domicile of the owner at the time of his death. 'The law of the state where the marriage is consummated establishes the "relationship" of one to the other as husband and wife or parent and child which is universally recognized, but the mere incidents flowing from that "status" or relationship are controlled by the law of the domicile of the parties or the situs of the property. The interest of the wife in the husband's property whether she take as heir or otherwise, is wholly a creation of statute law, precisely as is the right of inheritance between parent and child, natural or adoptive, and we see no reasonable ground for distinction between the two as to the principle under discussion.' (*Calhoun v. Bryant,* 28 S. Dak. 266, 133 N. W. 266.)

"Rights of inheritance in property do not accrue until the death of the owner; and the rights of an adopted child to inherit cannot be fixed and determined when the adoption takes place, for such rights may be changed, modified, or repealed by the legislature of the state. They are separate and

distinct from the act of adoption. What an adopted child shall inherit is not ascertained by the law in force at the time of the adoption, but at the death of him from whom he seeks to take. The relationship of an adopted child to his adopting parents is not subject to change; the inheritable capacity of such child may, however, be changed at any time. Consequently the rights of the adopted child to inherit property should be determined when and where inheritance is sought, in accordance with the ordinary rule." (p. 514.)

We have not failed to note the forcible dissenting opinion of the chief justice of New Hampshire in the case just cited; but, as pointed out by the editor of L. R. A., the diverse conclusions reached by the majority of the New Hampshire court and its dissenting chief justice are based upon their respective views touching the nature of the disqualification imposed by the law of Massachusetts, the majority view being that it was merely a feature of the Bay State's law of inheritance, and the minority view that it was a limitation of the appellant's status established in and by the adoption proceedings. As already indicated, we favor the view that there is no such thing as a limited status of adoption (*Bilderback v. Clark,* 106 Kan. 737, 742, 743, 189 Pac. 977), and that the law of inheritance is a mere incident which is without controlling significance outside the state of its enactment, and should not be applied in another jurisdiction where its tenor is out of harmony with the law of the forum. See, also, instructive analysis of various cases in *Simpson v. Simpson,* 29 Ohio C. C. 503; and Goodrich on Conflict of Laws, 329-332.

We note that the intestate estate of John J. Riemann included both real and personal property. As he was a resident of Kansas at the time of his death the conclusion we have reached in regard to the real property applies also to the personalty. (18 C. J. 810.)

The case of *Boaz v. Swinney,* supra, is overruled; our former opinion and judgment in this case are set aside; the judgment of the district court is reversed and the cause remanded with instructions to permit the appellant to share in the estate of John J. Riemann in accordance with the rights of an adopted child as defined by Kansas law.