## PFEIFER v. WRIGHT. *
### No. 156.

Circuit Court of Appeals, Tenth Circuit.

June 12, 1930.

McDERMOTT, Circuit Judge, dissenting.

R. E. Stephenson, of Sapulpa, Okl., and Jacob L. Stryker, of Fredonia, Kan. (John R. Miller, of Sapulpa, Okl., on the brief), for appellant.

John Embry, of Oklahoma City, Okl., and Streeter Speakman, of Sapulpa, Okl. (Em-

*Rehearing denied September 8, 1930.

bry, Johnson, Crowe & Tolbert, of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

LEWIS, Circuit Judge.

This appeal is from an order sustaining a demurrer to and dismissing appellant's bill of complaint. She claims an interest as heir in the estate of James H. Wright, who resided in Creek county, Oklahoma, for several years just prior to his death, which occurred about March 1, 1928. The issues are, (1) whether appellant, decedent's illegitimate child, was made legitimate under Kansas statutes and thus his heir to property in Oklahoma under the laws of that state, and (2) whether decedent was intestate of any of his estate.

The bill shows that appellant was the illegitimate child of decedent, that she was born September 5, 1883, in Kansas, where her mother and father then resided on adjoining farms in Wilson county. At her birth her mother was 18 years and her father 20 years of age, they were children of reputable neighbors, they were lovers and intended and expected to marry; but the parents of the mother went to the home of James soon after the child was born and notified his parents that they would not permit their daughter to marry him. At the request of James the child was given his name, she being thereafter known as Minnie Wright until she grew up and married E. G. Pfeifer. The mother continued to reside in Wilson county until her death, when her child was about 14 years of age. James H. Wright continued to live with his father's family for about seven years after the birth of the child, when he went away. When Minnie was quite young he took her to his father's home on different occasions, where she was kept for a while, sometimes for weeks. He taught her to address him as father, to address his father and mother as grandfather and grandmother, and to address his brothers and sisters as uncles and aunts. He would at times take her about the neighborhood and introduce her as his daughter. He showed a fatherly affection for Minnie from her birth until his death, and she addressed him as father on all occasions. He provided for her support and maintenance during her childhood, and assisted her during all his lifetime. When Minnie married E. G. Pfeifer the decedent purchased a farm in Wilson county at a cost of about $9,000 and gave Mrs. Pfeifer and her husband the possession and use of it without charge. About two years before his death he and his wife, Rosa B., the appellee, visited Mrs. Pfeifer at her home on the farm and while there they conveyed by deed a life estate in the farm to her and the remainder in fee to her children. He provided funds for Mrs. Pfeifer's daughter to attend high school and normal school and always referred to her children as his grandchildren. In his letters to her he would address her as "My dear Daughter." He left no other children or descendants of children, nor did his father or mother survive him.

The said acts, conduct and treatment of appellant by the said James H. Wright constituted, it is alleged and claimed, general and notorious recognition of appellant as his daughter, and were sufficient under provisions of the Kansas statute to legitimate her and give to her the status of a lawful child of decedent, thus constituting her an heir to him according to the laws of Oklahoma, where all of his property was situate at the time of his death. In that respect the bill alleges:

"The said public acknowledgment so made on the part of the said Wright was sufficient to satisfy the law of the state of Kansas of the certainty that the said Wright was the father of the plaintiff. The said public acknowledgment operated to attach to the plaintiff the social status of a legitimate daughter of the said Wright. One of the incidents of such social status of the plaintiff as the daughter of the said Wright, was to inherit from her father according to a child born in wedlock, real and personal property, according to the laws of the descent and distribution of the state in which the property was situated at the time of the death of her father. The plaintiff states, that her social status, under the rule of the comity of law among the several states, as a daughter of the said Wright, as established and recognized by the laws of the state of Kansas, is entitled to force and effect in the state of Oklahoma. The plaintiff alleges that she is entitled to inherit property from her father in the state of Oklahoma according to the law which relates to the descent of property from the father to his children born in wedlock."

Under the common law an illegitimate child was held to be filius nullius or filius populi, it was without right even to the name of its natural father, and being without inheritable blood it could acquire nothing except by its own efforts. From an early day the states began to regard and deal with this unfortunate condition in a more humane and just way, as did the civil law (see Brightly's notes to Stevenson v. Sullivant, 5 Wheat. 207,

5 L. Ed. 70), which provided several methods by which the child's status could be changed to that of a lawful child, thus effecting legitimation and placing the child in all respects upon the same footing as if begotten and born in wedlock. In England at the common law legitimation could be effected only by act of Parliament; but by whatever method made, when made, the child is invested with all the rights of a lawful child. Its civil and social status becomes that of a lawful child of the natural father, and the child and father thereafter stand in their relations to each other as though the birth had been during wedlock. Statutes of the several states all following the general purposes of the civil law are not uniform on the subject—some require marriage of the mother and putative father and recognition of the child, or receiving it into the family. That seems to be the general type, but others may be less exacting to effect legitimation. None of them appear to require court procedure. That omission, it is said, is in avoidance of perpetuating the shame. So uniformly, proof of compliance with statutory requirements, when the question arises, rests in pais. Laws of the domicile of the father at the time he acts determine the effect of his acts, and if his acts are such as to effectuate legitimation as declared by those laws, the status of the child is thereby changed from illegitimate to legitimate. That status, when once changed, is said to be indelible, and is to be accepted in other jurisdictions for the purposes of descent of real property and the distribution of personal property of the father. Wharton on the Conflict of Laws (3d Ed.) vol. 1, p. 552; Ross v. Ross, 129 Mass. 243, 37 Am. Rep. 321; Miller v. Miller, 91 N. Y. 315, 43 Am. Rep. 669; Irving v. Ford, 183 Mass. 448, 67 N. E. 366, 65 L. R. A. 177, 97 Am. St. Rep. 447; Dayton v. Adkisson, 45 N. J. Eq. 603, 17 A. 964, 4 L. R. A. 488, 14 Am. St. Rep. 763; In re Presley's Estate, 113 Okl. 160, 240 P. 89; Fowler v. Fowler, 131 N. C. 169, 42 S. E. 563, 59 L. R. A. 317; In re Forney's Estate, 43 Nev. 227, 184 P. 206, 186 P. 678, 24 A. L. R. 553; 12 C. J. p. 460. Under Oklahoma statute, where a decedent leaves a wife and only one child, and no lawful issue of other child, they take in equal shares intestate property of the deceased husband and father.

But, in addition to statutes in many states providing conditions on which an illegitimate child becomes legitimate, there are also statutes providing conditions on which an illegitimate child may become an heir to its father. This is so in the states of California (Blythe v. Ayres, 96 Cal. 532, 31 P. 915, 924, 19 L. R. A. 40), Iowa (Brisbin v. Huntington, 128 Iowa, 166, 103 N. W. 145, 5 Ann. Cas. 931), North Dakota (Eddie v. Eddie, 8 N. D. 376, 79 N. W. 856, 73 Am. St. Rep. 765), and Oklahoma (Comp. Stats. Okl. 1921, § 11303), and perhaps others. That is there are statutes giving an illegitimate the right to inherit from the father as an illegitimate on named conditions; and other statutes legitimating illegitimates on conditions named, thus giving to them the status of lawful children, and then their right to inherit from the father is because they have been made lawful children and inherit as such. The Oklahoma statute cited above embodies both conditions. It names those on which an illegitimate may inherit as such from its father; and it also names conditions, different in kind and requiring the subsequent marriage of the mother and father, on which the child is made legitimate. The bill does not allege compliance with conditions which permit an illegitimate to inherit as such under the Oklahoma statute. In that respect the statute requires that the father shall acknowledge his paternity in writing signed in the presence of a competent witness. Holloway v. McCormick, 41 Okl. 1, 136 P. 1111, 1114, 50 L. R. A. (N. S.) 536.

■ It is not contended by appellee that the facts stated in the bill of complaint do not bring appellant within the literal terms of the Kansas statute, but appellee contends that the Kansas statute is not one of legitimation, that it does not purport on compliance with its conditions to change the status of the child from illegitimate to legitimate, that it is only a statute of descent and applicable only to property in Kansas, that it can have no extraterritorial force or effect and therefore appellant cannot inherit as the decedent's child in Oklahoma. There is not now, nor has there ever been so far as we are advised, a statute of Kansas which specifically deals with the subject of legitimation; but since an early day, and ever since the Revision of 1868 that state has had in force the statute on which appellant relies. The sections, as they are numbered in the Revision of 1923, are 22—121, 22—122, 22—123, and 22—124. Appellant relies principally upon the second numbered section. The four sections read thus:

"Illegitimate children inherit from the mother, and the mother from the children.

"They shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must

have been general and notorious, or else in writing.

"Under such circumstances, if the recognition of relationship has been mutual the father may inherit from his illegitimate children.

"In thus inheriting from an illegitimate child, the mother and her heirs take preference of the father and his heirs."

The inquiry then is, whether on the facts stated in the bill this statute legitimated appellant, so as to give her the status of a lawful child, and thus make her an heir to decedent as such; or whether the statute only made her an heir to decedent as an illegitimate, effectual only as to property in Kansas.

We are unable to say that the statute relied on discloses a legislative intention to change the status of a child from illegitimate to legitimate. Its only purpose, so far as we are able to discover from its terms, is to give to an illegitimate child as such the right to inherit from the father on the conditions named. But the claim of appellant seems to be that the Kansas Supreme Court has construed it to be a legitimation statute, that compliance with it legitimates the child. If that be so we willingly accept the construction, as it is our duty to do.

The first case in which the Supreme Court of Kansas dealt with this statute is Brown v. Belmarde, 3 Kan. 41, and said of the second quoted section, supra, that it "shows that it is not necessary that children be legitimate in order to inherit from the father. The issue of a man and his mistress might inherit from the father, if recognized as his children in the manner pointed out by the statute; yet the issue would nevertheless be illegitimate. The recognition would not make them legitimate, but merely give to them the quality of inheritors." It may be said that these comments of the court were in a sense dictum, because it was later pointed out that the father had died before the statute was enacted, and as to that the court said: "At the time the recognition must have taken place, there was no law in force giving to that act such an effect. To give it any legal effect whatever there must have been some law in existence prescribing what that effect should be. The act of 1859 cannot reach back and attach to an action, which at the time of its performance was entirely indifferent, such grave, legal consequences." Moreover, another statute of Kansas provided that the common law of England should be the law of the land and rule of decision, and the court decided that case according to the rules of the common

law on the subject of illegitimacy affecting the right of inheritance, and hence the court held that the third instruction requested at the trial of that case, which deraigned title through the illegitimate son from the putative father, was properly refused; because according to the common law the illegitimate was without inheritable blood. But in that case the statute was brought under consideration, and it became the duty of the court to pass on it. Nor have the views thus expressed in that case been modified since or changed. There are only two other cases that can be said to have any reference to or bearing on the point, Smith v. Smith, 105 Kan. 294, 182 P. 538, and Fett v. Riemann, 124 Kan. 539, 262 P. 16, 17. The question presented in the Smith Case was whether, under the Kansas statute, recognition by the father gave to the illegitimate child the right of inheritance through the father from his collateral kindred, to the same extent as a child born in lawful wedlock, and the child's right to so inherit was sustained. There are some broad expressions in the opinion to the effect that when all of the sections quoted supra, are considered they indicate a legislative purpose to take away the disqualification resulting from illegitimacy and to give an illegitimate the status of a general heir. However, the property there involved was situate in Kansas; there was nothing said about the child's social status or whether it had been made legitimate under the statute; and for purposes of that case its rights were the same under the statute, as construed, whether it inherited as an illegitimate or as a legitimate child. The court did not say its status as general heir was because the statute had legitimated it. In the Fett Case the court had for decision the question whether restrictions on the rights of inheritance of an adopted child, laid by the laws of Illinois, where the child was adopted, should be applied to the descent and distribution of property left by a brother of the adoptive father. The court rejected this restriction as to property in Kansas of collateral kindred. The Kansas statute gives an adopted child the same rights of person and property as a legitimate child. In the opinion the court called attention to the hostile attitude of the common law toward the subject of legitimation and adoption of children, and in that connection said: "Our lawmakers deliberately crossed over to the side of the civil law—an historical fact which gives a keynote to the general trend of decisions of this court throughout its entire history." Obviously, the issue we have here was not decided in that case. These three Kan-

sas cases are the nearest in approach to a construction of the statute, as now contended for by appellant. The first one, in so far as it has weight, is against the contention. The other two cannot be said to construe the statute as a legitimation statute. We are clearly of opinion that the Kansas court has not so construed the statute, and we are unable to so construe it.

James H. Wright left an estate all in Oklahoma valued at more than one million dollars. After making a number of small bequests amounting to a little over six thousand dollars he closed his will with this paragraph: "And I give and bequeath to my wife, Rosa B. Wright, the balance of my property both real and personal to be used by her so long as she lives and enjoys the same."

It is appellant's contention that appellee took only a life estate, and that subject thereto the remainder vested by decedent under the Oklahoma statute in appellant and appellee share and share alike. But inasmuch as it is our conclusion that appellant was not legitimated under the Kansas statute and cannot take as an heir of decedent property in Oklahoma, she cannot maintain this suit—being without interest; and we therefore think it unnecessary and inappropriate that we pass upon the will for the purpose of determining the estate devised and bequeathed to Mrs. Wright.

The judgment is affirmed.

McDERMOTT, Circuit Judge (dissenting).

I regret my inability to concur. In my opinion the conclusion reached by the majority would be sound in any jurisdiction which adheres to the principles of the common law as applied to the rights of recognized illegitimates. The Kansas Supreme Court has, within recent years, been confronted with two questions which involved the principal rights of recognized illegitimates; in each case, that court has acknowledged that the principles of the common law denied to the illegitimate the right claimed; in each of the cases, that court has expressly declined to follow the unbroken current of common-law decisions, and has granted to the illegitimate the right claimed. In no instance has the Kansas Supreme Court denied to a recognized illegitimate any right of a legitimate child. In a dictum in still a third case, decided within the last two years, that court has expressly declared that, where the rights of illegitimate and adopted children are involved, the jurisprudence of Kansas has crossed over to the civil law.

If this court is free to construe for itself the statutes of Kansas, set out in full in the majority opinion, I agree with the construction placed thereon by that opinion. Moreover, I concede that there is no Kansas decision which holds or says that a recognized illegitimate has the status of a legitimate child. But our duty does not end when we have examined the statutes. It is conceded by both parties to this litigation, and by the majority opinion, that the status of the appellant must be determined by Kansas law. Local law arises in part by statute and in part by decisions of the highest court of the state. It is thoroughly settled that the courts of the United States, in ascertaining local law, will be governed by the decisions of the highest court of the state, where there is no applicable statute. In Guffey v. Smith, 237 U. S. 101, at page 113, 35 S. Ct. 526, 529, 59 L. Ed. 856, there was no statute defining the rights of the parties, but there were decisions of the highest court of the state, and the Supreme Court said:

"These decisions constitute rules of property and must be accepted and applied in passing upon the complainants' rights. McGoon v. Scales, 9 Wall. 23, 27, 19 L. Ed. 545, 546; Bucher v. Cheshire R. Co., 125 U. S. 555, 583, 8 S. Ct. 974, 31 L. Ed. 795, 798; Barber v. Pittsburgh, etc., Ry., 166 U. S. 83, 99, 17 S. Ct. 488, 41 L. Ed. 925, 933."

To the same effect, see Claiborne County v. Brooks, 111 U. S. 400; City of Detroit v. Osborne, 135 U. S. 492, 10 S. Ct. 1012, 34 L. Ed. 260; Blaylock v. Incorporated Town of Muskogee (8 C. C. A.) 117 F. 125; Old Colony Trust Co. v. City of Tacoma (9 C. C. A.) 230 F. 389; Berlet v. Lehigh Valley Silk Mills (3 C. C. A.) 287 F. 769; Howell v. Witman-Schwartz Corporation (3 C. C. A.) 7 F.(2d) 513; City of Galveston v. Rowan (5 C. C. A.) 20 F.(2d) 501.

If the express words of the Kansas statutes alone are considered, an illegitimate child has but few rights. It may inherit from the mother, and from the father if openly recognized by him, and the father and mother may inherit from it. As far as I am advised, excepting for Kansas, it is the uniform rule that statutes granting rights to illegitimates, being in derogation of the common law, should be strictly construed. In 7 C. J. at page 690, the author, referring to statutes giving illegitimates certain rights of inheritance, states that the contention has frequently been made that such statutes should be liberally construed and should confer upon the illegitimate the status of a legitimate. But the author states:

"But this view has been generally rejected; and the courts have generally held that legislation giving to illegitimate children the right of succession, being in derogation of the common law, should be strictly construed."

But the decisions of the Supreme Court of Kansas are exactly to the contrary. The Kansas statute is to the contrary, section 77—109 of the Revised Statutes of 1923, providing:

" * * * But the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of this state, but all such statutes shall be liberally construed to promote their object."

The Kansas Supreme Court, in Smith v. Smith, 105 Kan. 294, 182 P. 538, which involved the statutes now in question, held that the statutes conferring rights upon recognized illegitimates should be liberally and not strictly construed.

For convenience, we speak of the "status" of an illegitimate child. But I do not understand that "status" is in itself an end; rather, I consider "status" as a general word which is useful to describe a relationship upon which are attendant certain rights. If the law confers upon a recognized illegitimate all of the rights of legitimacy, it can be properly said to have the "status" of a legitimate child. Aside from property rights, the status of legitimacy carries with it the right to the name of the father, and parental care and affection. The petition in this case discloses that the father had bestowed these rights upon this appellant. The law deals more frequently with material rights—the principal property rights which follow in the wake of legitimacy: (a) The right to inherit from the parents; (b) the right to inherit from collateral kindred of the parents; and (c) the right of support.

The express language of the Kansas statutes gives reciprocal rights of inheritance from the mother and the father and no more. Under the common-law jurisprudence, such statutes were strictly construed; illegitimates were given the rights set out in the statute and no more. Thus we find the rule laid down without qualification that a statute permitting inheritance from the mother "does not, however, allow him to inherit from her ancestors or from her lineal or collateral kindred." 7 C. J. 961. The Kansas Supreme Court was confronted with this question of collateral inheritance. Notwithstanding the fact that the general rule of the common law

was to the contrary, and notwithstanding the fact that the statutes did not in terms give the right of collateral inheritance, the Kansas court allowed the illegitimate the right of collateral inheritance. Smith v. Smith, 105 Kan. 294, 182 P. 538. It is true that the opinion is predicated upon the statutes; the fact still remains that the statutes conferred no such rights in terms, and the opinion discloses a determination to relieve, as far as possible, the circumstances of the unfortunate but innocent illegitimate child.

To my mind, an even more significant decision is that of Doughty v. Engler, 112 Kan. 583, 211 P. 619, 30 A. L. R. 1065, decided in 1923. That case presented the question of whether there was a nonstatutory obligation upon the father to support an illegitimate child. The common law, and the decisions of the various states which had been confronted with the same question denied any obligation upon the putative father to support his child. 7 C. J. 955. The Kansas court recognized this situation, and said:

"At common law the father of an illegitimate child was under no legal duty to support it. * * * The courts of this country apparently in every case in which the question has been raised have held that without legislation on the subject the father of an illegitimate child cannot be required to provide for its support. * * * The common law with almost uniform consistency treated an offspring of parents not married to each other as nullius filius—the son of no one—of no father and no mother. That is to say, it closed its eyes to the fact of that relation and in legal aspect ignored its existence."

Notwithstanding, the Supreme Court of Kansas held the putative father to a nonstatutory obligation of support.

In a third case, where the rights of an illegitimate were not in issue, the Supreme Court has declared that, in matters involving adopted and illegitimate children, the law of Kansas has crossed over from the common law to the civil law. Riemann's Estate, 124 Kan. 539, 262 P. 16. The statutes of adoption of Kansas are so dissimilar to the statutes of legitimation, that the decision itself is not in point. Many years ago, in Boaz v. Swinney, 79 Kan. 332, 99 P. 621, the Supreme Court adhered to the common law in its attitude toward adopted children. When the case of Riemann's Estate was first decided (123 Kan. 718, 256 P. 1004), Boaz v. Swinney was followed by a divided court. A rehearing was granted and by a unanimous

opinion, Boaz v. Swinney was overruled, and the civil law was followed with reference to adopted children. The court said:

"Not only may different statutes constrain different judicial conclusions on questions of law pertaining to the incidents and consequences attaching to the adoption of children, but the hostile attitude of the common law towards the whole subject of legitimation and adoption of children is not unlikely to be reflected in the decisions of great American courts which adhere to the common law tradition. Statute of Merton, 20 Hen. III, c. 9 (A. D. 1235); Doe d. Birtwhistle v. Vardill, 2 Cl. & Fin. 570, 5 Eng. Rul. Cases 748 (House of Lords, 1240); Keegan v. Geraghty [101 Ill. 26], supra; Frey v. Nielson, 99 N. J. Eq. 135, 132 A. 765. While the jurisprudence of this state is greatly obligated to the common law, on this particular matter of adoptions, as well as on the law of intestate succession, our lawmakers deliberately crossed over to the side of the civil law—an historical fact which gives a keynote to the general trend of decisions of this court throughout its entire history." 124 Kan. 542, 262 P. 16, 17.

We thus find that the law of Kansas has conferred upon a recognized illegitimate the important rights of support and collateral inheritance, which are not conferred even in common-law jurisdictions which have statutes of limited inheritance, and which were not conferred by the common law, but which were conferred by the civil law. We have moreover a dictum that the Kansas court has rejected "the hostile attitude of the common law towards the whole subject of legitimation and adoption" and has "deliberately crossed over to the side of the civil law."

In this state of the law of Kansas, I think we should look to the civil law, and not the common law, to determine the rights of an illegitimate child which has been recognized by the father as provided by the statute, recalling that it is conceded that the recognition here alleged conforms to the requirements of the Kansas statute. The Roman law provided six methods of legitimation, which, as set out in 7 C. J. 947, and by Gibbons in his History of the Decline and Fall of Rome, were: (1) Subsequent marriage of the parents; (2) consecration of child to the use of the state; (3) adoption; (4) by the last will of the father; (5) by special dispensation from the emperor; and (6) by recognition of the father. In Brightly's Notes, 5 Wheat. 262, 266, the author adds to the sixth the following: "As, if the father designated one of his natural children as his

child, in any public or private instrument." The results that flowed from these acts, under the civil law, is not in dispute. Brightly states:

"In all these cases, except the 2d, the children thus legitimated were in all respects placed upon the same footing as if born in lawful wedlock. (Œuvres de D'Aguesseau, tom. 7, p. 393, et seq.; Pothier, Pandect. in Nov. Ord. Redact., tom. 1, p. 27.)"

It is submitted that the Kansas court, by decision and dictum, has adopted the civil law jurisprudence as to illegitimate and adopted children; it is conceded that there has been a recognition under the Kansas statute; the civil law places such children "upon the same footing as if born in lawful wedlock." Although I recognize room for doubt, my personal belief is that, under Kansas law, a duly recognized illegitimate has the status of a legitimate child. Under the law of Kansas, a recognized illegitimate has been granted the rights of a legitimate child in every case that has arisen. No right has been denied it. I think the appellant is therefore entitled to the status of a legitimate child. The Oklahoma statute contemplates such a status where there has been a recognition in writing signed before a competent witness. No such recognition is here alleged, but it is clear that the public policy of Oklahoma is not opposed to the existence of such a status.

It is therefore my opinion that we should determine the question of whether the will of the testator devised the fee or a life estate to the appellee.