SMITH *et al. v.* MITCHELL *et al.*

(*Nashville,* December Term, 1946.)

Opinion filed May 3, 1947.

Rehearing denied June 26, 1947.

J. L. Jones and David Rhea, both of Pulaski, for appellants.

Charles E. Hagan and Bennett Eslick, both of Pulaski, for appellees.

Mr. Justice Neil delivered the opinion of the Court.

The complainant, as the administrator of the estate of M. M. Abernathy, deceased, filed his original bill in the Chancery Court to sell the decedent's lands for the payment of debts and for a distribution of the remainder to those entitled there to. It is alleged that M. M. Abernathy died July 30, 1946, intestate, and that he left surviving him his widow, Belle E. Abernathy, but no children or descendants of children, and without living parents. The bill makes approximately one hundred persons parties defendant, some of whom are residents of Giles County and others are non-residents of the state. Likewise, unknown heirs are made defendants. The defendants named in the bill are alleged to be the heirs of Almeda G. Abernathy who died intestate and who was the mother of M. M. Abernathy, deceased. She was the only child and heir at law of M. M. Mitchell and wife.

Upon the filing of this bill, Stanley Abernathy and Robert Mitchell Abernathy filed a petition asking that they be

made parties to the original bill on the ground that they were not made defendants and that they were both resident citizens of Giles County and "are the only heirs at law of the said M. M. Abernathy, deceased, and are the only persons having any interest in the real estate and personal property described in the bill, with the exception of Belle E. Abernathy, their mother, and lawful creditors."

According to the contention of the petitioners, they were born out of wedlock, but the said M. M. Abernathy recognized them as his children at all times, paid all necessary medical expenses at their birth, and named both of them, one of them being named "for the said M. M. Abernathy's favorite race horse"; that he sent them to school and provided for them in every way; that the said M. M. Abernathy and their mother, Belle Abernathy, were lawfully married in Alabama with the view of rendering petitioners legitimate and to enable them to acquire the rights of inheritance "as if born in lawful wedlock."

The complainants demurred to the petition upon the following grounds: (1) "Petition shows on its face that petitioners are illegitimate and under the statutes of Tennessee cannot inherit from their putative father." (2) "Because under the laws of Tennessee recognition of the illegitimate by the supposed father as his children does not legitimize them nor confer upon them the right of inheritance from their putative father." (3) "Because the marrage of the mother and putative father in Alabama does not legitimize children born prior thereto in Alabama or Tennessee."

Other grounds of the demurrer are more or less argumentative of the legal question made in grounds 1, 2, and 3, above quoted.

The Chancellor sustained the demurrer and petitioners prayed and were granted an appeal to this Court. There is but one question made in the assignments of error, to-wit, are petitioners entitled to inherit the estate of M. M. Abernathy, deceased, in the light of the admitted facts stated in their intervening petition?

Under the common law an illegitimate child was treated as *nullius filius*, and as such was incapable of inheriting from either the putative father or the mother.

It will serve no useful purpose in the instant case to cite the statutes that have been enacted from time to time to modify this rigid rule of the common law. The rule of the civil law upon the subject of the legitimation of bastards was never admitted in the law of England. By this rule children born out of wedlock are legitimated by the subsequent marriage of their parents. Statutes have been enacted to this effect in a number of the states, thus following the principle of the civil law. But we have no such statute in Tennessee.

Under the heading "Legitimation of Children" the Code of Alabama provides, "The marriage of the parents legitimates the children. The marriage of the mother and reputed father of a bastard child renders it legitimate if recognized." Code Ala. 1940, Tit. 27, sec. 10. Our statutes relating to the legitimation of bastards are found in Code sections 9565-9567, and are as follows:

"An application to legitimate a child not born in lawful wedlock is made by petition, in writing, signed by the person wishing to legitimate such child, and setting forth the reasons therefor."

"The court, if satisfied with the reasons, may, by order embodying the petition in full, and entered upon the minutes of the court, declare such child legitimate."

"The effect of the legitimation is to create the relation of parent and child between the petitioner and person legitimated, as if the latter had been born to the former in lawful wedlock."

It is conceded by complainants' counsel that the petitioners' father and mother were lawfully married in the State of Alabama and that if the said M. M. Abernathy and petitioners "had been citizens of Alabama (and the latter had been recognized as his children), then the appellants would have thereby become legitimate and entitled to inherit the estate of M. M. Abernathy in Tennessee." But they deny that "the simple marriage of Tennessee citizens in Alabama legitimated adult bastard children who are citizens of Tennessee." In support of this contention we are referred to *Finley v. Brown,* 122 Tenn. 316, 123 S. W. 359, 25 L. R. A., N. S., 1285; and *Cole v. Taylor,* 132 Tenn. 92, 177 S. W. 61. The petitioners also rely upon the same authorities as supporting the general principle that a person having been legitimated in another state of the Union is entitled to inherit under the laws of descent in Tennessee (where there is no conflict in the laws of descent).

We think it is clear from our cases, and probably the weight of authority in other jurisdictions, that where the putative father of an illegitimate and the mother of such child are married in a foreign state, or if there is an adoption of a child in a foreign state, and under the statute of that state the child is legitimated, the effect is that thereafter such child or children inherit from their putative father, or adopting parent, according to the laws of descent in Tennessee, as if they had been born legitimate in this state.

In *Cole v. Taylor, supra,* it was ruled that children of slave parents who were declared legitimate by the laws

of the state where such parents were domiciled were regarded as legitimate in Tennessee, but their right of inheritance was governed by the laws of descent in Tennessee, and, since the laws of this state permitted children of slave parents to inherit only from their parents, they could not take by descent from collateral kindred, i. e., brothers and sisters.

██ ██ In all cases where a child is legitimated in a foreign state, whether by marriage of the parents or by formal proceeding in a court of competent jurisdiction, we must look to the law of such state to determine their status, it being conclusive of their right to inherit from their putative father. Thus in *Finley* v. *Brown, supra,* the Court held it to be settled law that a child who is legally adopted in a foreign state, and the adopting parent and child are domiciled in such state, such child must under the comity of states receive recognition of its status in every other state having similar adoption laws. The same rule is held to apply where a child is legitimated by the laws of a foreign state. The governing rule, which is the majority rule was applied by this Court in *Finley* v. *Brown, supra,* and re-affirmed in *Cole* v. *Taylor, supra.* The rule is clearly stated in 1 Am. Jur., Adoption of Children, sec. 67, pp. 668, 669, as follows:

"The rule may be more accurately stated to the effect that the question whether the child has acquired the status of an adopted child, so as to allow him to inherit property in a state other than that of his adoption, will be determined by the law of the state creating the adoption, though that law, in respect to form and procedure of adoption, is dissimilar to that of the situs of the property, and if the child has been validly adopted by that law, that status, with its incidental rights, if any, as to inheritance, will follow him to, and be recognzed in, the

state where the property is, entitling him to inherit it, if and to the extent that the law of the latter state allows a child there adopted to inherit. The rule has been applied where there is a radical difference in the form and procedure by which the adoption proceedings are conducted. For example, the rule has been adopted where the adoption was by deed, and also where it was by private contract, instead of by a judicial proceeding as provided in the law of the state where the property is situated or the decedent resided."

In support of the foregoing, most of the cases referred to in *Cole* v. *Taylor* are cited, and also *Finley* v. *Brown*.

Now it is insisted in the instant case that the same rule applies in the matter of legitimatng a chld. It is contended that the parent and illegitimate child must be domiciled in the state where the marriage takes place before such child can be recognized as legitimate and given the right to inherit under the laws of Tennessee.

██ In response to this insistence, it must be conceded that neither of the contracting parties to a marriage is required to be domiciled in the state where the marriage ceremony is performed. Of course, they must comply with the laws of such state for it to be a valid marriage. In the instant case no question is made that the marriage of M. M. Abernathy and Belle Abernathy was for any reason invalid. They were domiciled in Tennessee and went across the line into Alabama and were by the law of that state made husband and wife. Now by all the authorities this marriage must be recognized in Tennessee and everywhere else as establishing a lawful relationship. And according to the statute of Alabama the petitioners thereby became the legitimate children of their parents. But the question before us is still unsolved. Are they the lawful children of their par-

ents in Alabama and bastards in Tennessee, because they did not go along with their parents and establish a domicile in Alabama when the marriage took place? .We think not.

The effect of our holding in *Finley* v. *Brown, supra* [122 Tenn. 316, 123 S. W. 363], is that children who are legitimate in one state are legitimate everywhere, with this important qualification, "States acting by comity will not permit a statute of a foreign state to extend any further than the local statue upon the same subject, or to confer any other rights; thus pursuing the principle that the *lex loci rei sitae* must control in the disposition of real estate." In other words, if an adopted child in a foreign state (or one who is made legitimate in a foreign state) has acquired under the laws of that state the status of one capable of inheriting, then such child must be held capable of succeeding to real property in accordance with the laws of the state where the property lies. The foregoing is fully supported by the following excerpt from *Ross* v. *Ross*, 129 Mass. 243, 246, 37 Am. Rep. 321, and quoted with approval in *Finley* v. *Brown, supra*:

"Inheritance is governed by the *lex rei sitae;* but legitimacy is to be ascertained by the *lex domicilii*. If a man domiciled in England has two legitimate sons there and dies intestate, owning land in this commonwealth, both sons have the status of legitimate children here; but, by virtue of our statute of descents, the land descends to them equally, and not to the eldest son alone, as by the law of England."

In *Van Matre* v. *Sankey*, 148 Ill. 536, 36 N. E. 628, 634, 23 L. R. A. 665, 39 Am. St. Rep. 196, and also quoted with approval, it is said:

"The decree, by force of this statute, established, *eo instanti* its rendition, the relation of parent and child, imposed upon the parties the *reciprocal* duties and obligations of that relation, and impressed upon and invested the child with the rights and qualities of a child and heir at law of Samuel Sankey. This we understand to be the construction of the statute by the courts of that state (Pennsylvania). . . . The status of appellee, having been established under, and existing by virtue of, the *lex domicilii*, is to be recognized and upheld in every other state, unless such status, or the rights flowing therefrom are inconsistent with, or opposed to, the laws and policy of the state where it is sought to be availed of."

We think the effect of the Court's decision in these cases is that if a child is adopted or legitimated in a foreign state it can inherit from the parent in Tennessee provided the law of the foreign state is not inconsistent with, or opposed to, the policy of our own state. In other words, if the child is capable of inheriting in the foreign state, he, being legitimated by marriage of the parents and by force of law, is thereby legitimated in Tennessee, and is capable of inheriting lands lying in this state. But the rights acquired under foreign adoption or legitimation will not be enlarged so as to confer rights of inheritance in this state contrary to our own statute of descent.

The only effect of legitimating children by statutory proceeding in Tennessee is as stated in Code section 9567, "to create the relation of parent and child between the petitioner and person legitimated, as if the latter had been born in lawful wedlock." Now what is the effect of the marriage of the mother to the putative father, if it is not to make the child legitimate "as if he had been

born in lawful wedlock''? By virtue of comity between the states, this status is recognized everywhere and the question of domicile of the parent and/or the child is not determinative because domicile was not essential to the validity of the marriage. The legitimation by marriage is not dependent in any jurisdiction that we know of upon the domicile of the parties. If the statute provides for legitimation by marriage and recognition by the putative father, we have no right by mere judicial pronouncement to amend the act by adding to it a *proviso* that the parties must be domiciled in the state where the contract of the marriage is consummated.

We see no conflict between the statute of Alabama by which petitioners were legitimated and our own statute except in form and procedure. We are certainly not giving effect to laws of a foreign state which are opposed to our own institutions or policy.

■ In order to give due recognition to a child's right to inherit lands in Tennessee, where it has acquired the status of legitimation under the laws of a foreign state, such statute must be "substantially similar" to our own statute. See *Ross* v. *Ross*, 129 Mass. 243, 246, 37 Am. Rep. 321, and other cases cited in *Finley* v. *Brown, supra,* 122 Tenn. on page 327, 123 S. W. 359, 25 L. R. A. (N. S.), 1285, and American Law Institute's Restatement of the Law of Conflict of Laws, proposed Final Draft Number 1, sec. 149. "The status of legitimacy created by the law of a state having jurisdictoin so to do, will be given the same effect in another state as is given by the latter state to the status when created by its own law." Vol. 1 Am. Jur., Adoption of Children, sec. 67, p. 669.

■ Now what is meant by statutes being "substantially similar"? We think they are substantially similar when they effectuate the same result, that is, giving an

illegitimate the status of a legitimate child. But the right of a child legitimated in a foreign state to inherit lands in Tennessee is exactly the same as a child legitimated by statutory proceeding in Tennessee, thus giving the laws of a foreign state no extraterritorial force. Both in *Finley* v. *Brown* and *Cole* v. *Taylor*, we gave due recognition to the adoption in one and legitimation in the other of the status of the child. They could only inherit, however, as provided by the statutes of descent in this state. By comity we recognized the legitimacy of illegitimate children of slave parents, legitimated under the law of a foreign state, but their rights of inheritance was limited according to the law of Tennessee based upon the generaly accepted truth that "the state is the sovereign of the soil."

By the statute of Alabama, one method of legitimation under the civil law was adopted, while in Tennessee another and distinct rule of the civil law was favored for the legitimation of children. Instead of the Alabama statute being in conflict with the public policy of this state, it seems to be in furtherance of it and in harmony with it. The courts, therefore, do no violence to the institutions of our own state in giving full recognition to rights that have been acquired under such foreign statute. In giving consideration to the doctrine of comity as affecting the rights of litigants under a foreign statute, Mr. Justice Cardozo used a most appropriate expression which we here quote with approval: "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." *Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 120 N. E. 198, 201.

As to the devolution of property of the adopting or legitimating parent, we adhere to the majority rule that

the status of the child will follow him to, and be recognied in, the state where the property is situated, entitling him to inherit it if, and to the exent, that the law of this state allows such child to inherit.

We are therefore constrained to hold that Stanley Abernathy and Robert Mitchell Abernathy are lawful and legitimate sons of M. M. Abernathy, deceased, and are entitled to inherit the property described in the original bill.

The assignments of error are sustained and the Chancellor's decree is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

### ON PETITION TO REHEAR.

The defendants in error have filed their petition to rehear complaining that the Court was in error in "holding that Robert Mitchell Abernathy and Al Stanley Abernathy, citizens of Tennessee, were legitimated by virtue of the marriage of their mother and putative father in Alabama." It is earnestly insisted in the petition that the question of legitimacy in Alabama by virtue of said marriage "is a new point in this cause and is nowhere touched on in the pleadings or the briefs and the argument."

We think petitioners' counsel are mistaken in the foregoing insistence, as shown by the following statement which appears on their original brief:

"The question before the Court on this appeal is, did the marriage of Belle E. Abernathy to M. M. Abernathy, both resident citizens of Giles County, Tennessee, in Athens, Alabama, in 1945, legitimate their bastard children, appellants, both of whom were and are resident citizens of Giles County, Tennessee?

"Inasmuch as all of the assignments of error are comprehended within the foregoing query, it is not deemed proper to attempt to answer the various assignments of error *seriatim.*"

The petitioners further contend that the opinion of the Court has no support in any case in Tennessee or in any other jurisdiction. This is a matter about which able counsel are free to discuss and express disagreement with the Court, but we are not disposed to argue the point at length, being satisfied with the authorities cited in the original opinion. We are not unmindful of the fact that the courts are in disagreement upon the question before us, but modern authority has shown a decided trend away from the ancient rule of a common law that an illegitimate was *nullius filius,* had no kinship with anybody, and could inherit from no one. There is now recognized in most jurisdictions what is denominated "the personal law" of the illegitimate which removes the stigma of bastardy cast upon him and which generally governs where no property rights are involved. This humane rule which clothes him with the dignity of legitimacy everywhere goes further and confers upon him the right of inheritance. Thus it is said in 11 Am. Jur., Conflict of Laws, section 22, p. 321:

"If the child is legitimated by his personal law, he will generally be permitted to inherit property in another state, though he would not be regarded as legitimated by the law of the latter state, provided bastard children legitimated under the law of such latter state are capable of inheriting."

In support of the foregoing text numerous cases are cited by the annotator. It is contended by petitioners that *Pfeifer* v. *Wright,* 10 Cir., 41 F. (2d) 464, 73 A. L. R.

932, cited in support of the above text, does not support our original opinion. We think it is in conformity with our holding in *Cole* v. *Taylor,* 132 Tenn. 92, 96, 177 S. W. 61. In *Pfeiffer* v. *Wright, supra,* the illegitimate was denied the right to inherit under the laws of Oklahoma, she having been legitimated by the father in the State of Kansas. While legitimate in Kansas, it was held that the legitimation did not operate to change the law of descent in Oklahoma, the situs of the property involved, the conditions under which illegitimates could inherit property in Oklahoma not having been complied with. That is in substance the holding of this Court in *Cole* v. *Taylor, supra,* and we adhere to it in the instant case. In other words, we hold that a child born out of wedlock and legitimated by virtue of the law of a foreign state is permitted to inherit property in Tennessee only to the extent that one legitimated by the law of Tennessee may inherit under our laws.

Among the numerous decisions cited in 73 A. L. R. at page 941, in which the "personal law of the Bastard" is held to confer the right to inherit, there appears the following general comment by the annotator (page 946):

"But the great weight of authorities either hold or assume, for the purposes of the particular decision, that the question whether a bastard has acquired the status of legitimacy for the purpose of inheriting or sharing in the distribution of property in the state is to be determined not by the law of the situs of the property, nor by that of the domicil of the decedent as such, but by the personal law of the bastard. Aside from the question as to which state shall furnish that personal law, when there are two or more possibly applicable laws, the rule just stated is, expressly or by implication, supported by the

following cases:'' citing cases from Connecticut, Louisiana, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, and Scotland.

The petition to rehear is denied.

All concur.