MATTER OF LEE

In Visa Petition Proceedings

A-20929617

A-20929618

A-20929619

*Decided by Board August 18, 1977*

Under Korean law, the relationship created between a child born out of wedlock and his father by "recognition" through registration in the Korean Family Registry is identical in all relevant respects to that between a father and child born during marriage. Since the rights and duties flowing from each of the relationships is identical, a "recognized" child is a "legitimated" child under section 101(b) of the Immigration and Nationality Act. Where, as here, the recognition occurred prior to the eighteenth birthday of the children, they are eligible for issuance of immigrant visas under section 203(a)(2) of the Act.

ON BEHALF OF PETITIONER: Pro se

BY: Wilson, Acting Chairman; Maniatis and Maguire, Board Members. Board Member Appleman dissenting.

These cases are before the Board on a motion for reopening and reconsideration of our decision of September 7, 1976, in which we affirmed the decision of the District Director denying the visa petitions on the ground that the petitioner's sons, although "recognized" under Korean law by registration as the legal children of the petitioner in the Korean Family Registry, were not "legitimated" for the purposes of section 101(b) of the Act. The petitioner now contends that we have misconstrued Korean law, and that the relationship created by "recognition" brings into effect identical rights and duties to those which flow from the relationship between a father and a child born during wedlock. The petitioner has submitted a memorandum of law from a Korean attorney in support of his claim. See 8 C.F.R. 3.2. The motion to reopen and reconsider will be granted. Upon reconsideration, we shall withdraw our September 7, 1976, decision, and order the petitions approved.

In the past we have relied upon a 1968 memorandum from the Library of Congress to hold that the legal relationship created by "recognition" is not equivalent to a "legitimation" under Korean law. *Matter of Kim*, 14 I. & N. Dec. 561 (BIA 1974). Nonetheless, we held until 1974 that

this procedure created a valid adoption under Korean law, and consequently classified the relationship as one of father-child under section 101(b)(1)(E). *Matter of Chong*, 13 I. & N. Dec. 45 (BIA 1968). We withdrew from this holding in *Matter of Chung*, Interim Decision 2312 (BIA 1974), when we learned from the Library of Congress of a Korean Supreme Court decision to the contrary. Since 1974, we have thus held that "recognition" does not create a relationship valid under section 101(b) for the purpose of immigration benefits.

In dealing with a relationship created under the laws of a foreign country, we have long analyzed that relationship in terms of the rights and duties it brings into effect under the foreign law. *Matter of Kwong*, Interim Decision 2387 (BIA 1975); *Matter of Scaramuzzo*, unreported (BIA October 16, 1957). Cf. *Matter of Irani*, Interim Decision 2468 (BIA 1975); *Matter of Kong*, Interim Decision 2360 (BIA 1974). If a Korean legal procedure brings into effect rights and duties coextensive with the rights and duties of children born during wedlock under the laws of Korea, then the procedure by which this is accomplished deserves inclusion under the legally descriptive term of art "legitimation."

In the cases now before us for reconsideration, the petitioner has submitted a memorandum of law from a Korean attorney. This memorandum details the rights and duties flowing from the relationship created by "recognition" by registration of the child in the Korean Family Registry as the legal child of the father. The memorandum alleges that the rights and duties flowing from the legal relationship created by the act of "recognition" are identical to the rights and duties flowing from the relationship between a father and a child "born . . . during the marriage."

We have consulted the Far Eastern Law Division of Library of Congress. In a memorandum dated June 28, 1977 [1], Dr. Sung Yoon Cho, Acting Chief of the Division, has verified that, with the exception of one minor difference which is arguably irrelevant for immigration purposes, the rights and duties flowing from the two relationships are coextensive.

The rights and duties flowing from the relationship created by "recognition" directly parallel those resulting from the relationship between the father and a child "born during . . . the marriage" in the following ways:

(1) The father in both cases owes an absolute duty of support (Article 974 of the Korean Civil Code of 1960);

(2) The father in both cases has an absolute right of custody (Art. 909);

(3) The child in both cases has full and equal inheritance rights with respect to property (Arts. 1000, 1008, 1014);

(4) The child in both cases has a legal duty to obey his father (Art. 974);

---

[1] Appendix "A."

(5) The child in both cases has a right to use the family name (Arts. 781 and 782);

(6) A son in both cases can succeed to the role of "Head of Family" (Art. 984).

The sole difference in the rights flowing from these two relationships revealed in the two documents is that, although both a recognized son and a son born during the marriage may succeed to the title of "Head Of Family," the oldest son born during the marriage takes precedence over the "recognized" son in the assumption of that role (Article 985). This difference is immaterial for two reasons.

First, although a daughter born during the marriage may succeed to "Head Of Family," her rights are inferior to the rights of the "recognized" son. Thus, if there were no son born during the marriage, the "recognized" son would succeed to the role of "Head Of Family" ahead of a female sibling born during the marriage.

Second, the concept of "Head of Family" is entirely foreign to United States common law, and has no parallel in United States parent-child relations. Thus, if all the remaining rights and duties are identical, it should be deemed irrelevant to the issue of immigration benefits, as beyond the twin goals of family unity and the prevention of immigration fraud.

We conclude that the relationship created by "recognition" through registration in the Korean Family Registry as the legal child of the father is identical in all relevant respects to that between a father and a child born during the marriage under Korean law. Since the rights and duties flowing from each of the relationships are identical, we shall therefore include a "recognized" child within the ambit of a "legitimated" child under section 101(b). We therefore recede from our earlier holding in the present case, and hold that the petitioner's three sons have been "legitimated" under Korean law. As legitimated children who were under the age of eighteen years at the time of their legitimation, and were at that time in the custody of their father, they are eligible for the issuance of an immigrant visa under section 203(a)(2) of the Act. The petitions will therefore be approved.

ORDER: The motion to reconsider is granted.

FURTHER ORDER: The petitions are approved.

Irving A. Appleman, Member, Dissenting

In my opinion this decision is premature. The ruling is based on a memorandum from the Far Eastern Law Division of the Library of Congress, in response to a communication from this Board. Neither our communication nor the response, was seen by the parties prior to the decision.

The memorandum appears to be somewhat at variance with earlier memoranda from the Library of Congress involving the same subject

307

matter. Relying on an earlier statement, we held in *Matter of Chong*, 13 I. & N. Dec. 45 (BIA 1968) that there was a valid adoption on somewhat similar facts. In 1974, as a result of another memorandum from the Library of Congress, we withdrew from this in *Matter of Chung*, Interim Decision 2312. Now, armed with still a third memorandum, we are holding that timely legitimation occurred.

In *Matter of Hassan*, Interim Decision 2531 (BIA 1976) I expressed the view, in a separate opinion, that these memoranda of foreign law, obtained from the Library of Congress, should be furnished to both sides, with opportunity for comment, *prior* to decision. To my mind this case still further illustrates the evils flowing from the somewhat arbitrary manner in which the Board requests these statements, and then acts upon them *ex parte*.

I have no quarrel with the Board seeking the help of the experts in the Library of Congress. Foreign law, and particularly the kind of nonstatutory, custom law with which this Board must often deal, is sometimes hard to ascertain. It is particularly difficult for the alien, who frequently finds that local consulates, or even his embassy, do not have appropriate legal help or may even be unsympathetic to his claims and hence not disposed to be helpful. I am somewhat less tolerant of the lethargy demonstrated by Service personnel, in ascertaining the foreign law, since they do have access to the Library of Congress and can, with a little effort, obtain the necessary information at a level where it can be made part of the record and appropriately addressed by the parties. It is possible they assume that this is part of the alien's overall burden of proof, without entirely recognizing the practical difficulty he may encounter. In this case, however, it is difficult to fault the Service inasmuch as the Board had already twice examined the Korean law.

Accordingly, without at this time expressing a view as to correctness of the majority interpretation, I would furnish a copy of the Board's letter of inquiry and of the response of the Library of Congress, to both Service and petitioner, and would solicit a statement of position. If the responses cast sufficient doubt on the foreign law, I would remand the case and reopen the proceedings for appropriate development. As pointed out in my concurring opinion in *Hassan*, *supra*, foreign law is a question of fact to be appropriately proved. I think there is a due-process limit to the extent administrative shortcuts can or should be taken in this area.

## *APPENDIX*

### RECOGNITION AND THE RESULTANT PARENTAL RELATIONS UNDER KOREAN LAW

*The Status of a Recognized Child*

Pertinent provisions of the Civil Code of 1960[1] concerning recognition of a child born out of wedlock are as follows:

> *Article 855.* 1. A child who is not legitimate may be recognized by its father or mother. When the marriage of the parents becomes null and void, the child born between them shall be deemed to be a child born out of wedlock.
>
> 2. A [recognized] child born out of wedlock shall acquire the status of a legitimate child by the reason of the marriage of its father and mother as from the time of marriage.
>
> *Article 859, paragraph 1.* The recognition of a child is effected by giving notification thereof [to the Family Registrar] in accordance with the provisions of the Family Registration Law.
>
> *Article 860.* Recognition shall be effective retroactively from the time of birth. However, the rights acquired by third persons prior thereto shall not be prejudiced thereby.

The provisions of the Family Registration Law [2] to which reference was made in Article 859, paragraph 1 appear in Article 60, which states:

> *Article 60.* Notification to effect recognition of a child shall state the following:
>
> (1) the full name, sex, date of birth, and domicile of the child;
>
> (2) in cases where a dead child is recognized the date of death of the child and the full name, the date of birth and domicile of lineal descendants thereof;
>
> (3) in cases where recognition is effected by the father, the full name and domicile of the mother;
>
> (4) in cases where a child is a member of a family, the full name and domicile of the head of the family and their relationship.

The term "recognition" (*inchi*) means that a person voluntarily and in conformity with the law acknowledges that he or she is the father or mother of a certain child. A child born out of wedlock, if recognized by the father, is called a *sŏja* (a child by a concubine) or a recognized (acknowledged) child.[3] In reference to recognition by the mother, the Supreme Court held in 1967 that "the physical evidence showing the delivery of the child is construed to be sufficient for the establishment of parental relations between mother and child without waiting for a formal recognition by its mother or the mother's filing the notification of birth with the Family Registrar."[4]

With respect to the effect of false notification given by the father to the Family Registrar stating that his natural child born out of wedlock is the legitimate child of himself and of his wife, no court cases have been

---

[1] Law No. 471, Feb. 22, 1958; came into force on Jan. 1, 1960.

[2] Law No. 535, Jan. 1, 1960.

[3] Under the new Code, the term *"sŏja"* was deleted, as it was contrary to the democratic principles of the 1948 Constitution. Regardless of whether an illegitimate child is recognized or not, it is now called a child born out of wedlock or a child born outside the marriage. This has led to considerable confusion in understanding the meaning of a recognized child.

[4] Supreme Court Decision, Oct. 4, 1967. See *Taepŏpwŏn p'ale yojijip* [Digest of Supreme Court Decisions], Seoul, Pŏpwŏn, Haengchŏngch'o, 1976, p. 618.

reported. On this subject, however, Professor Kwang-hyŏn Chŏng is of the opinion that "while such notification may not be valid . . . it may be given the effect of recognition, because the intention of the father to recognize the child is manifested through the said notification." [5] According to Professor Chŏng, this is called "quasi-recognition" and "conversion of a void act" as set forth in Article 138 of the Civil Code. While the majority of scholars agree with Professor Chŏng, there is a contrary view which states that since a voluntary recognition, as opposed to a compulsory recognition by a decree of the court, is effective only by filing the notification of recognition with the Family Registrar, such false notification should not be given the effect of recognition.[6]

It should be noted that the status of a recognized child, unless the child's father and mother are married, is still short of a legitimate status. In other words, a recognized child is a child without the status of a legitimate child, since the child was born to a married man and a woman who was not his lawful wife.

*Parental Relations*

It is by recognition that parental relations—authority, support, succession, etc.—are legally formed for the first time between the parent and illegitimate child.

*Relatives.* There are two kinds of relatives: natural relatives by birth and relatives created by law through marriage, recognition, or adoption. Referring to the relationship between a recognized child and the father's spouse and his relatives by blood or by affinity, Article 774 of the present Civil Code provides:

> *Article 774.* A child born out of wedlock [who has been recognized] is deemed to have the same parental lineage and the same degree of relationship towards the father's spouse and towards the father's relatives by blood or by affinity, as a child of the father's spouse [legitimate child].

Thus, under Korean law, the parental lineage and degree of relationship between a recognized child and its father's spouse is regarded as the same as that of the natural child of the father's spouse; likewise, the relationship between a recognized child and the father's relatives is regarded as the same as that of the legitimate child.

*Entry of the child's name in the family register.* After recognition is effected, a recognized child, like a legitimate child, assumes his or her father's name, and his or her name is entered in the father's family register. References are made to Articles 781 and 782 of the same Code:

[5] Kwang-hyŏn Chŏng, *Sinch' inzok sangsokpŏp yoron* [New Law of Relatives and Succession], Seoul, Isŏng Muhwasa, 1958, p. 207.

[6] Chu-su Kim and Ch'ŏn-sik, Pak, *Kaejŏng hangul hojŏk silmu chŏnsŏ* [Revised Manual of Family Registration in Korean Characters], Seoul, Hanguk Sabŏp Haengjŏng Hakhoe, 1970, p. 298.

*Article 781.* A child shall assume its father's surname as well as the origin of the surname, and its name shall be entered in its father's family register.

*Article 782.* 1. If a member of a family gives birth to or fathers a child born out of wedlock, he or she may have the child's name entered in his or her family register.

2. If it is impossible for a child born out of wedlock to have its name entered in its father's family register, the child's name may be entered into its mother's family register, and it it is impossible for the child to have its name entered in its mother's family register, the child may establish a new family.

In interpreting the above two articles, Professor Chu-su Kim states that if the father who is a member of a family (but not the head of the family) has recognized a child born out of wedlock, he may have the child's name entered in his family register, or he may refuse to do so for some reason under Article 782. However, if the father is the head of a family, his child's name is entered in his family register by operation of law under Article 781, after the child acquires the status of a recognized child.[7] If the name of a recognized child is recorded in the family register, the relationship mentioned in Article 774 is established for the first time.

*Parental authority.* Both the legitimate child and the recognized child are subject to the same parental authority or power as provided in Article 909 of the same Code, with certain exceptions:

*Article 909.* 1. A child who is a minor shall be subject to the parental power of his or her father with whom the child is residing.

2. If a child has no father, or the father is unable to exercise parental power for any reason, the child's mother with whom the child is residing, shall exercise parental power over the child.

3. In cases where there is no person by whom the parental power pursuant to the preceding paragraph is exercisable over a [recognized] child born out of wedlock, the natural mother of such child shall exercise parental power.

When the father's spouse (referred to as the legitimate mother) is to exercise parental authority over a recognized child in the father's place, she is subject to the provisions concerning guardianship according to Article 912 of the Civil Code which provides that "as to the mother who exercises parental power over a child not her own, the provisions concerning guardianship shall be applicable *mutatis mutandis.*" Thus, the legitimate mother must obtain the approval of the Family Court if she wishes to give consent to a recognized minor child for certain important legal acts. Such acts include a change in the mode of education

---

[7] Chu-su Kim, *Chusŏk ch'inzok sangsokpŏp* [Article-by-Article Commentary on the Family Law], Seoul, Pŏpmunsa, 1969, p. 72. See also Chu-su Kim, "New Civil Code and Protection of a Child Born Out of Wedlock," *Pŏpchŏng*, vol. 13 (July 1958), p. 53. Article 782 is subject to misinterpretation. Pointing out that this article is the direct result of the preservation of the family system under the new Civil Code, Professor Kim suggests that the family system, together with Article 782, should be abolished. *Ibid.*

or in the place of residence designated by the father, or restriction or revocation of business transactions permitted by th e father.

Likewise, when the legitimate mother gives assent to the adoption of a recognized child by others, she must obtain the approval of the Family Council in accordance with Article 869 of the same Code:

*Article 869.* If the person to be adopted is under fifteen years of age, his father and mother, or his guardian, if he has neither father nor mother, shall give assent to the adoption in their place. However, if his legitimate mother, stepmother or guardian gives assent to the adoption, the consent of the Family Council shall be obtained.

*Support.* With respect to support, Articles 974 to 976 of the Civil Code state;

*Article 974.* Relatives falling under any one of the following i tems are under a duty to furnish support to each other:

(1) lineal relatives by blood and their spouses:

(2) head of family and family members;

(3) any other relatives (only in cases where they share living accommodations).

*Article 975.* A person under duty to furnish support shall perform his or her duty only in the case where the person entitled to receive support is unable to support himself or herself by his or her own financial capacity or labor.

*Article 976.* In cases where there exist two or more persons under duty to furnish support, or no agreement has been reached between the parties concerned with respect to the order in which they are to furnish support, such order shall be determined by the court upon the application of the parties concerned. The same shall also apply to cases where there exist two or more persons entitled to support, and the financial capacity of the person under duty to furnish support is insufficient to support all of them.

The above provisions concerning support apply e qually to legitimate and recognized children.

*Succession.* Pertinent provisions regarding family headship and succession to property are as follows:

*Article 984.* A person shall become a successor to the head of a house according to the following order:

(1) a male person who is a lineal descendant of the person succeeded to;

(2) a female person who is a lineal descendant of the person succeeded to;

(3) a wife of the person succeeded to;

(4) [omitted];

(5) [omitted].

*Article 985.* If there are two or more lineal descendants in the same rank mentioned in the preceding Article, persons of nearer degree of relationship shall precede; among lineal descendants in the same degree of relationship, the child born during the substance of marriage [legitimate child] shall precede.

*Article 1000.* In succession to property, the persons mentioned below shall become successors in the order that follows:

(1) lineal descendants of the person succeeded to;

(2) lineal ascendants of the person succeeded to;

(3) brothers and sisters of the person succeeded to;

(4) collateral relatives by blood within the eighth degree of the person succeeded to.

*Article 1009.* If there exist two or more successors in the same rank, their shares in the succession shall be equally divided. However, if a person becomes concurrently a successor to property and to the head of a house, his share in the succession shall be his

individual portion plus fifty percent of his portion; and the portion of a female successor shall be one-half of that of a male successor.

*Article 1014.* In cases where a person who has become a co-successor by recognition or by a final judgment after the opening of the succession applies for the partition of estate, and other co-successors have already effected the partition or other disposition, he may claim the payment of value of the estate which is equivalent to his portion.

In the case of succession to the family headship, a legitimate child is given preference over a recognized child (Article 985), and a recognized male prevails over a legitimate female (Article 984).

In succession to property, however, successional order and portion of property for a recognized child are equal to the order and portion for a legitimate child (Articles 1000 and 1009). The successional portion for a legitimate female is one-half of that of a recognized male (Article 1009). Article 1014 is considered an exception to the general rule embodied in Article 860 which provides that recognition which is effective retroactively from the time of birth cannot prejudice the rights already acquired by third persons prior to recognition.

*Summary*

It appears that the status of a recognized child under Korean law is equal to the status of a legitimate child, with the following exceptions: (1) a legitimate son enjoys a preferential right to succeed to the family headship; (2) in the absence of the father, the father's spouse, who exercises parental authority over a recognized child, is restricted by the guardianship clause of the Civil Code, which requires the approval of the Family Council for certain important legal acts; and (3) the father's spouse is required to obtain the approval of the Family Council when she gives assent to the adoption of a recognized child by others.

In view of the equal successional rights to property between a legitimate child and a recognized child, and other aspects of parental relations, it is generally held that a recognized child in Korea enjoys more generous treatment than a recognized child in any other country of the world.[8]

Prepared by Dr. Sung Yoon Cho
Assistant to the Chief
Far Eastern Law Division
Law Library, Library of Congress
Washington, D.C. 20540
June 1977

---

[8] Chu-su Kim, *Pŏpchŏng*, p. 54; Kun-sik Lee, "The Status of an Illegitimate Child," *Pŏp che wŏlbo*, vol. 8, no. 3 (March 1966), p. 33.