MATTER OF REYES

In Visa Petition Proceedings

A-22172079

*Decided by Board August 28, 1980*

(1) The term "legitimated" in section 101(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. 1101(b)(1)(C), has been interpreted by the Board to include those children who were illegitimate at birth, but who thereafter through legally recognized means attained the full legal status of legitimate children.

(2) A "legitimated" child is one placed "in all respects upon the same footing as if begotten and born in wedlock...." *Pfeifer v. Wright*, 41 F.2d 464, 466 (10 Cir. 1930), *cert. denied*, 283 U.S. 896 (1931).

(3) Excepting *Matter of Lee*, 16 I&N Dec. 305 (BIA 1977), the Board has never recognized processes (legal or otherwise) that did not place an illegitimate child on an equal footing with a legitimate child as satisfying the "legitimated" proviso of section 101(b)(1)(C).

(4) Where the beneficiary was born out of wedlock in the Dominican Republic, was not legitimated under the means prescribed by the laws of that country, and did not attain all of the rights and status of a legitimate or legitimated child when he was acknowledged by the petitioner in 1976, the Board cannot conclude that the beneficiary was "legitimated" within the meaning of section 101(b)(1)(C).

(5) The Board withdraws from its decision in *Matter of Lee*, 16 I&N Dec. 305 (BIA 1977).

By:   Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated March 20, 1978, this Board dismissed the petitioner's appeal from a District Director's denial of a visa petition that he had submitted on behalf of the beneficiary as his unmarried son. The beneficiary had been born out of wedlock in the Dominican Republic and subsequently "acknowledged" by the petitioner under the laws of that country. We concluded that an "acknowledged" child in the Dominican Republic could not be equated with a "legitimated" child within the meaning of section 101(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. 1101(b)(1)(C). *Matter of Reyes*, 16 I&N Dec. 475 (BIA 1978). On October 18, 1979, the United States District Court for the Eastern District of New York remanded the case to the Board for further consideration. *Reyes v. INS*, 478 F.Supp. 63 (E.D.N.Y.

1979).[1] The Board was directed both to reconcile its decision in this case with that in *Matter of Lee*, 16 I&N Dec. 305 (BIA 1977), and to consider whether the rulings with respect to the relevant laws of the Dominican Republic were in fact "rationally related to the purposes of the Act." On reconsideration, we reaffirm our decision in this case and overrule *Matter of Lee, supra*, insofar as it is inconsistent with the decision herein.

The record indicates that the beneficiary was born out of wedlock in 1962 in the Dominican Republic, a country in which legal distinctions still exist between children born in and out of wedlock. Under the laws of the Dominican Republic, for a child to be legitimated, there must be an "acknowledgment of the natural offspring followed by the marriage of the parties." *See Matter of Doble-Pena*, 13 I&N Dec. 366, 367 (BIA 1969). The beneficiary's natural parents did not marry. The petitioner, however, acknowledged the beneficiary as his son in 1976, when the boy was 14 years old. This "acknowledgment" did not place the beneficiary in the same status as a legitimate or legitimated child, but did produce "the same effects of legitimate filiation with the exception of the distinctions made in matters concerning succession." *See Matter of Reyes, supra* at 477.

In 1977, the petitioner sought preference status for the beneficiary as his "unmarried son" under the provisions of section 203(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1153(a)(2). To qualify as a "son" for preference purposes, the beneficiary must qualify as the petitioner's "child", as defined in section 101(b) of the Act. *See Nazareno* v. *A.G.*, 512 F.2d 936 (D.C. Cir. 1975), *cert. denied*, 423 U.S. 832 (1975); *Matter of Coker*, 14 I&N Dec. 521 (BIA 1974).

Section 101(b)(1) provides in relevant part that:

The term "child" means an unmarried person under twenty-one years of age who is—
(A) a legitimate child; or

- - -

(C) a child legitimated under the law of the child's residence or domicile, or under the law of the father's residence or domicile, whether in or outside the United States, if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation.[2]

The term "legitimate" as used in section 101(b)(1)(A) of the Act was

[1] The case was remanded to "the INS." The Board of Immigration Appeals is not part of the Immigration and Naturalization Service. *See* 8 C.F.R. 3.1(a)(1). As the Board entered the decision appealed from, however, reconsideration on remand is appropriately before this Board.

[2] Section 101(b)(1)(C) is relevant only to father-child relationships. Section 101(b)(1)(D) recognizes mother-child relationships, even where the child is illegitimate. This distinction has been upheld by the Supreme Court in *Fiallo* v. *Bell*, 430 U.S. 787 (1977).

initially interpreted by the Board within conventional common law precepts as applying only to children born in wedlock. *See Matter of Kubicka,* 14 I&N Dec. 303 (BIA 1972). The term has since been held, however, to include children who are born out of wedlock within jurisdictions that have eliminated all distinctions between legitimacy and illegitimacy (*i.e.,* where children have full filial rights and obligations as to both natural parents by virtue of birth alone). *See Matter of Pavlovic,* Interim Decision 2799 (BIA 1980) (Yugoslavia); *Matter of Bautista,* Interim Decision 2731 (BIA 1979) (Puerto Rico); *Matter of Wong,* 16 I&N Dec. 646 (BIA 1978) (Peoples' Republic of China). There is no claim presented in the case before us that the beneficiary qualified as the petitioner's "legitimate" son.

The term "legitimated" in section 101(b)(1)(C) has been interpreted by the Board to include those children who were illegitimate at birth, but who thereafter through legally recognized means attained the full legal status of legitimate children. The Board's interpretation of section 101(b)(1)(C) resulted from the commonly accepted definition of "legitimation" as being the act of putting an illegitimate child in the position or state of a legitimate child before the law by legal means.*See* Gordon and Rosenfield, *Immigration Law and Procedure* (Revised Edition 1977), sec. 2.18(b)(3); 10 C.J.S. Bastards sec. 7 (1938); *Black's Law Dictionary* 811 (5th ed. 1979); *Bouvier's Law Dictionary* 1927-28 (3rd ed. 1914). Thus, a "legitimated" child is one placed "in all respects upon the same footing as if begotten and born in wedlock...", is "invested with all the rights of a lawful child...", and his or her "civil and social status becomes that of a lawful child of the natural father, the child and father thereafter [standing] in their relations to each other as though the birth had been during wedlock." *Pfeifer v. Wright,* 41 F.2d 464, 466 (10 Cir. 1930), *cert. denied,* 283 U.S. 896 (1931). Where less than equality of status results, an act of legitimation is not deemed to have occurred. *See Pfeifer v. Wright, supra* at 467; *In re Tomacelli-Filomarino,* 73 N.Y.S.2d 297, 299 (1947); *In re Vincent,* 71 N.Y.S.2d 165, 171-172 (1947); *Vergnani v. Guidetti,* 308 Mass. 450, 454, 32 N.E.2d 272, 274 (1941). *Compare In re Lund,* 26 Cal.2d 472, 159 P.2d 643 (1945). *See also Peignand v. INS,* 440 F.2d 757 (10 Cir. 1971).

Legitimation laws have commonly required the subsequent marriage of a child's natural parents to effect legitimation, but other methods of conferring the full status of a legitimate child are recognized in different jurisdictions. *See, for example, Matter of Chambers,* Interim Decision 2730 (BIA 1979) (Maryland; legitimation by acknowledgment); *Matter of Duncan,* Interim Decision 2373 (BIA 1975) (Liberia; legitimation by judicial decree); *Matter of Ramirez,* 13 I&N Dec. 666 (BIA 1971) (Louisiana; legitimation by acknowledgment); *Matter of C—,* 9 I&N Dec. 268 (BIA 1961) (Michigan; legitimation by

acknowledgment).

Excepting *Matter of Lee, supra,* the Board has never recognized processes (legal or otherwise) that did not place an illegitimate child on an equal footing with a legitimate child as satisfying the "legitimated" proviso of section 101(b)(1)(C). *See Matter of Clahar,* 16 I&N Dec. 484 (BIA 1978) (Jamaica); *Matter of Remy,* 14 I&N Dec. 183 (BIA 1972) (Haiti); *Matter of Greer,* 14 I&N Dec. 16 (BIA 1972) (Montserrat, B.W.I.); *Matter of Gouveia,* 13 I&N Dec. 604 (BIA 1970) (Guyana); *Matter of Doble-Pena, supra* (Dominican Republic); *Matter of Monma,* 12 I&N Dec. 265 (BIA 1967) (Japan); *Matter of Lauer,* 12 I&N Dec. 210 (BIA 1967) (Germany); *Matter of Mandewirth,* 12 I&N Dec. 199 (BIA 1967) (Austria); *Matter of Anastasiadis,* 12 I&N Dec. 99 (BIA 1967) (Greece); *Matter of Van Pamelen,* 12 I&N Dec. 11 (BIA 1966) (The Netherlands); *Matter of Maungca,* 11 I&N Dec. 885 (BIA 1966) (Philippines); *Matter of The,* 10 I&N Dec. 744 (BIA 1964) (Indonesia); *Matter of Archer,* 10 I&N Dec. 92 (BIA 1962) (Trinidad, B.W.I.); *Matter of C—,* 9 I&N Dec. 597 (BIA 1962) (Spain); *Matter of C—,* 9 I&N Dec. 268 (BIA 1961) (Italy); *Matter of J—,* 9 I&N Dec. 246 (BIA 1961) (British Guiana); *Matter of W—,* 9 I&N Dec. 223 (BIA 1961) (Surinam); *Matter of F—,* 7 I&N Dec. 448 (BIA 1957) (Portugal); *Matter of D—,* 7 I&N Dec. 438 (BIA 1957) (Italy); *Matter of J—,* 7 I&N Dec. 338 (BIA 1956) (France). Each of these cases, which arose in countries that both distinguished between legitimate and illegitimate children and specified the method by which a child could be legitimated, involved children who did not attain the full legal status of legitimate children.

Applying these principles to the present case, where the beneficiary was illegitimate at birth, was not "legitimated" by the means prescribed under the laws of the Dominican Republic, and did not attain all of the rights and status of a legitimate or legitimated child when acknowledged by the petitioner, we cannot conclude that the beneficiary was "legitimated" within the meaning of section 101(b)(1)(C) of the Act.

Regarding the question of whether the differences in status between a legitimated child and an acknowledged child in the Dominican Republic are such that they can be rationally related to the purposes of the Immigration Act so as to warrant including the former, but not the latter, within the scope of section 101(b)(1)(C), we initially note the language of the Supreme Court in *Fiallo v. Bell,* 430 U.S. 787 (1977), regarding the distinctions drawn by Congress in section 101(b)(1) of the Act:

> With respect to each of these legislative policy distinctions, it could be argued that the line should have been drawn at a different point and that the statutory definitions deny preferential status to parents and children who share strong family ties. But it is clear from our cases, ... that these are policy questions entrusted exclusively to the

political branches of our Government, and we have no judicial authority to substitute our political judgment for that of the Congress. *Fiallo* at 798 (citations omitted).

Where Congress has specified those father-child relationships which should be recognized for immigration purposes using terms of commonly understood legal meaning, the Board cannot "redefine" those terms based on its own views as to how the purposes underlying the immigration laws might be better achieved. In interpreting the language of section 101(b), although one must be mindful of the purpose of the immigration laws to preserve the family unit, it must also be recognized that section 101(b) in fact embodies the Congressional conclusions as to which familial relationships warrant recognition. *See Fiallo v. Bell, supra* at 797.

The requirement that legitimation occur before a father-child relationship will be recognized, however, may have in part resulted from a Congressional desire to adopt a rule of clear application, which operated to discourage incidents of fraud and to recognize such relationships only where a father had already demonstrated for all non-immigration purposes that he wished the child to have equal status under the law with his legitimate children. *See Fiallo v. Bell, supra* at 795 n. 6. *Cf. Peignand v. INS, supra* (regarding the Nationality Act of 1940).

The fact that distinctions arise in "matters concerning succession" in the Dominican Republic between legitimated and acknowledged children may well be relevant to such legislative purposes. First, any test dependent on a case-by-case assessment as to which distinctions in law between legitimated and acknowledged children are meaningful for immigration purposes would be far from a "bright-line test." *Peignand v. INS, id.* Moreover, as to the goal of minimizing the incidents of fraud, it could be concluded that fewer mala fide applications (*i.e.,* involving individuals attempting to bestow or derive benefits from other than natural children) would result where the individual was forced to give a child an essentially irrevocable equal status under the eyes of the law with his own legitimate child in order to accomplish the fraud. In this regard, we note that perhaps the most significant legal distinctions between legitimate and illegitimate children (and certainly the most sensitive distinction giving rise to the majority of litigation in this area) have been differences involving inheritance rights. In any event, it is not the Board's role to probe and test the justification for the legislative decision.

We recognize that the Board's decision in *Matter of Lee, supra,* cannot be reconciled with the decision herein. Nor can the decision in *Matter of Lee* be meaningfully distinguished from over twenty years of Board precedent decisions, which were not referenced in that case. The decision in *Lee* resulted in major part from a desire to reunite a

family.[3] This humanitarian desire, however, cannot justify a redrafting of the immigration laws by the Board and we withdraw from our decision in *Lee*. The petitioner's arguments herein should be addressed to Congress. *See Fiallo* v. *Bell, supra* at 799 n. 8; *Matter of A—*, 5 I&N Dec. 272, 284 (A.G. 1954).

ORDER: The visa petition is denied.

---

[3] Legitimation requirements which mandate marriage of the natural parents often make legitimation by the natural father impossible. This can of course be true even where a strong family tie exists between the father and child. That such relationships cannot be recognized under the clear terms of section 101(b)(1) tempts one to define the provisions therein so that all bona fide familial relationships can be recognized. We believe this result can only be lawfully accomplished, however, by a redrafting of the laws in question by Congress.