# In re Susan Edith TORRES, Beneficiary of visa petition filed by Jose S. Torres, Petitioner

## File A73 673 872 - Vermont Service Center

*Decided May 4, 1998*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

In order to qualify as a "legitimated" child under section 101(b)(1)(C) of the Immigration and Nationality Act, 8 U.S.C. § 1101(b)(1)(C)(1994), a child residing or domiciled in Peru must have been under the age of 18 at the time the changes in Peruvian law regarding legitimation took effect, and "extramarital filiation" must have been established prior to the child's 18th birthday, unless he or she was legitimated under the former laws of that country. *Matter of Quispe*, 16 I&N Dec. 174 (BIA 1977); and *Matter of Breninzon*, 19 I&N Dec. 40 (BIA 1984), modified.

Pro se

Thomas K. Ware, Service Center Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, FILPPU, COLE, ROSENBERG, MATHON, GUENDELSBERGER, JONES, GRANT, and SCIALABBA, Board Members.

COLE, Board Member:

In a decision dated June 24, 1997, the director of the Regional Service Center ("RSC") in Vermont denied the visa petition filed by the petitioner to accord the beneficiary immediate relative status as his child pursuant to section 201(b)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1151(b)(2)(A)(i) (1994). The RSC director subsequently certified his decision to the Board for review, requesting that we overrule our decisions in *Matter of Quispe*, 16 I&N Dec. 174 (BIA 1977), and *Matter of Breninzon*, 19 I&N Dec. 40 (BIA 1984), in light of relevant changes in Peruvian law. The appeal will be sustained, the RSC director's decision will be reversed, and the petitioner's visa petition will be approved.

## I. BACKGROUND

The petitioner is a 44-year-old native of Peru who was naturalized as a citizen of the United States on January 5, 1996. On January 10, 1997, the petitioner filed the instant visa petition on behalf of the 19-year-old beneficiary who is a native and citizen of Peru. The beneficiary was born out of wedlock on February 14, 1979, to the petitioner and a woman he never married.

With his visa petition, the petitioner submitted a copy of the beneficiary's birth certificate, registered by the petitioner in 1979, wherein the petitioner acknowledged the beneficiary as his daughter. The record also contains an opinion from a legal specialist at the Library of Congress dated May 31, 1996, which was furnished to the RSC director upon his request for information on the legal status of children born out of wedlock in Peru. The opinion states that the applicable sources of Peruvian law, which consist of the 1993 Constitution of Peru, *see* Constitucion [Constitution] art. 6 (Peru), and the Civil Code of Peru, *see* Codigo Civil [C.C.], no longer distinguish between children born in wedlock and children born out of wedlock. Children born out of wedlock are to be considered "extramarital" children, and recognition and a ruling declaring paternity or maternity are the only means of proof of the extramarital relationship. Attached to the legal opinion is a copy of Article 6 of the 1993 Constitution, as well as Articles 386 through 388 of the Civil Code.

Despite the above information, the RSC director denied the petitioner's visa petition. He concluded that he was bound to follow our decisions in *Matter of Quispe, supra*, and *Matter of Breninzon, supra*, in which we found that the legitimation of a child born out of wedlock in Peru required the marriage of the natural parents or a judicial declaration upon petition of the legitimating parent, as the mere acknowledgment of the child did not place that child in the same legal status as a child born in wedlock. As it appears from the record that the beneficiary's parents never married, the RSC director found that the beneficiary did not qualify as a child legitimated under the laws of her residence or domicile, as required by section 101(b)(1)(C) of the Act, 8 U.S.C. § 1101(b)(1)(C) (1994), and therefore did not qualify for immediate relative status pursuant to section 201(b)(2)(A)(i) of the Act. The RSC director did, however, certify his decision to the Board for review in light of the change of law in Peru. The Immigration and Naturalization Service has submitted a brief requesting that the Board reverse the RSC director's decision, overrule our holdings in *Matter of Quispe, supra*, and *Matter of Breninzon, supra*, and approve the instant visa petition.

## II. ANALYSIS

In visa petition proceedings, the burden is on the petitioner to establish by a preponderance of the evidence that the beneficiary qualifies for the benefit sought under the immigration laws. *Matter of Soo Hoo*, 11 I&N Dec. 151 (BIA 1965). For the beneficiary to qualify for immediate relative status under section 201(b)(2)(A)(i) of the Act, the petitioner must establish that the beneficiary meets the definition of a "child" as set forth in section 101(b)(1) of the Act. According to section 101(b)(1)(C) of the Act, a "child" includes "an unmarried person under twenty-one years of age who is . . . a child legitimated under the law of the child's residence or domicile . . . if such legitimation takes place before the child reaches the age of eighteen years and the child is in the legal custody of the legitimating parent or parents at the time of such legitimation."  Also inherent in the statute is the requirement that the petitioner establish that the beneficiary is his biological child. *Matter of Bueno*, 21 I&N Dec. 1029 (BIA 1997).

The beneficiary's birth certificate clearly demonstrates that she is under 21 years of age. It also shows that the petitioner recognized the beneficiary as his daughter in the same year in which the beneficiary was born, serving to establish that the beneficiary is his biological child. The remaining issue, then, is whether the petitioner's recognition of the beneficiary resulted in her legitimation "under the law of [her] residence or domicile" for purposes of section 101(b)(1)(C) of the Act.

In prior precedent decisions, we have defined legitimation as the act of placing a child born out of wedlock in the same legal position as a child born in wedlock. *See Matter of Reyes*, 17 I&N Dec. 512, 514 (BIA 1980), "Where less than equality of status results, an act of legitimation is not deemed to have occurred."  *Id.* With respect to Peru, we have specifically held that a child acknowledged under the laws of Peru does not qualify as a legitimated child for purposes of section 101(b)(1)(C) of the Act because that child does not enjoy the same legal status as a child born in wedlock. *See Matter of Breninzon, supra; Matter of Quispe, supra*. The legal opinion and text of Peruvian laws submitted to the RSC director by the Library of Congress do not clearly indicate whether the change in Peruvian law resulted in full "equality of status" between children born in wedlock and children born out of wedlock. The fact that children born out of wedlock in Peru are no longer referred to as illegitimate children but are instead referred to as extramarital children, *see* C.C., art. 386, merely indicates a change in form, not in substance.[1]

---

[1] The Service indicates in its brief on appeal that the Peruvian family laws have eliminated all distinctions between children born in wedlock and children born out of wedlock. The Service relies on Article 6 of the 1993 Constitution which provides in part that "[a]ll children have the same rights and duties. Mention of the parents' marital status and of their legitimacy is prohibited

In light of the RSC director's certification of this record to us for review, we undertook our own examination of the laws of Peru in order to ascertain the current legal status of children born in and out of wedlock in that country and to determine how those laws may affect the visa petition under consideration in the instant case. As a result of our examination, we conclude that there was a change in Peruvian law on November 14, 1984,[2] that served to place children born out of wedlock in the same legal position as children born in wedlock in all respects once "extramarital filiation" is established according to the legal procedures of Peru.[3] *See, e.g.,* C.C., arts. 235, 818.[4] Accordingly, we modify our holdings in *Matter of Quispe, supra*, and *Matter of Breninzon, supra*. Thus, a child born out of wedlock who was under 18 years of age on November 14, 1984,[5] or who was born on or after

in civil registers and any other identity document." However, a reading of Article 6 of the 1979 Constitution of Peru, which was examined by the Board in *Matter of Breninzon, supra*, at 41, indicates that Peru had already determined at that time that "[a]ll children have equal rights. Any reference concerning the civil status of the parents and the nature of the parentage of the children in civil registries and in identification documents is prohibited." In *Matter of Breninzon*, we held that regardless of the language of Article 6 of the 1979 Constitution, Peru had not eliminated all distinctions between children born in wedlock and children born out of wedlock, as the distinction with regard to inheritance rights between the two groups of children remained intact. *Id.* As the above-quoted language of Article 6 of the 1993 Constitution is, in essence, the same as the language found in Article 6 of the 1979 Constitution, we cannot base a decision in the instant case on Article 6 of the 1993 Constitution, nor on Articles 386 through 388 of the Civil Code, as they alone do not indicate that full "equality of status" between children born in wedlock and children born out of wedlock currently exists.

[2]All of the articles of the Civil Code discussed in this decision were signed on July 24, 1984, and went into effect on November 14, 1984. We note that, in his decision, the RSC director mistakenly stated that the cited provisions of the Civil Code went into effect on October 31, 1993. That date, however, appears to be the effective date of the Constitution.

[3]Article 387 of the Civil Code states that "[r]ecognition and the ruling declaring paternity or maternity are the only methods of proof of extramarital filiation." With regard to recognition, Article 390 of the Civil Code provides that "[r]ecognition is recorded in the registry of births, in a public legal document or in a will." If the recognition is recorded in the registry of births, Article 391 of the Civil Code provides that it "may be done at the time the birth is registered," as was done in this case.

[4]Article 235 of the Civil Code provides that "parents are required to provide for their under-age children's support, protection, education and upbringing, depending on their situation and possibilities. All children have equal rights." More importantly, Article 818 of the Civil Code provides that "[a]ll of the children have equal inheritance rights with respect to their parents. This stipulation covers children of the marriage [and] extramarital children who are voluntarily recognized or declared by a ruling, with respect to the inheritance of the father or the mother and their relatives . . . ."

[5]In its brief, the Service requests that we use January 1, 1993, as the date upon which a child in question must have been under 18 years of age in order to be legitimated, because, the Service claims, that was the effective date of the 1993 Constitution. As discussed above, the Constitution was not the law that placed children born out of wedlock in the same legal position as children born in wedlock, *see supra* note 1, and therefore we cannot accept its effective date as the date upon which a child in question must have been under 18 years of age in order to be legitimated.

31

that date, may qualify as the legitimated child of his or her father, if the requirements discussed above for proof of "extramarital filiation" are met before the child's 18th birthday. All children for whom "extramarital filiation" was not established before their 18th birthday or who were 18 years of age or older on November 14, 1984, must continue to meet the requirements for legitimation under the former Peruvian law, as discussed in *Matter of Quispe, supra,* and *Matter of Breninzon, supra.*

Based on the foregoing, we conclude that the beneficiary in the instant case has been legitimated under the laws of her residence or domicile prior to reaching the age of 18, as required by section 101(b)(1)(C) of the Act. We also find that the petitioner has met the legal custody requirement of section 101(b)(1)(C) of the Act, as interpreted in *Matter of Rivers*, 17 I&N Dec. 419 (BIA 1980) (holding that a natural father is presumed to have legal custody of his child at the time of legitimation in the absence of affirmative evidence indicating otherwise), In light of this finding, and the other findings made above, we rule that the beneficiary qualifies as a child pursuant to section 101(b)(1)(C) of the Act, and that she is therefore eligible for immediate relative classification under section 201(b)(2)(A)(i) of the Act. Accordingly, the appeal will be sustained, the RSC director's decision will be reversed, and the petitioner's visa petition will be approved.

**ORDER:** The appeal is sustained. The decision of the RSC director is reversed and the visa petition is approved.

Vice Chairman Mary Maguire Dunne did not participate in the decision in this case.